**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| M.S. and D.H., individually and on behalf of all others similarly situated,<br>*Plaintiffs*,<br><br>v.<br><br>MED-DATA, INC.,<br>*Defendant*. | C.A. No. 4:22-cv-187<br><br>Hon. Charles Eskridge<br><br>JURY DEMANDED |

# DEFENDANT MED-DATA, INC.'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

# TABLE OF CONTENTS

**INTRODUCTION** .......... **1**

**STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING** .......... **2**

**STATEMENT OF THE ISSUES** .......... **2**

**STANDARD OF REVIEW** .......... **3**

A. Federal Rule of Civil Procedure 12(h)(3) .......... 3

**FACTS AND BACKGROUND** .......... **4**

A. A former Meddata employee mistakenly uploaded personal and/or health care data to GitHub, a public-facing website. .......... 4

B. When MedData learned of the data security incident, MedData immediately investigated and notified the affected individuals about the breach. .......... 4

**SUMMARY OF THE ARGUMENT** .......... **6**

**ARGUMENT AND AUTHORITIES** .......... **6**

A. Plaintiffs' do not have Article III standing. .......... 6

1. Plaintiffs' have not suffered an injury in fact. .......... 8

(a.) Plaintiffs' alleged time and expense from identity protection and credit monitoring services does not constitute an injury in fact. .......... 9

(b.) Plaintiffs' alleged "diminution in value" of their personal information does not constitute an injury in fact. .......... 11

(c.) Plaintiffs' alleged "dignitary harm" does not constitute an injury in fact. .......... 13

(d.) Plaintiffs' alleged emotional distress does not constitute an injury in fact. .......... 14

2. Plaintiffs' alleged injuries are neither fairly traceable to the challenged conduct nor capable of being redressed by a favorable decision. .......... 15

**CONCLUSION AND PRAYER** .......... **18**

# TABLE OF AUTHORITIES

## FEDERAL STATUTES AND RULES

Fed. R. Civ. P. 12(b)(1) .......... 6

## FEDERAL CASES

*Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006) .......... 3

*C.C. v. Med-Data Inc.*, No. 21-2301-DDC-GEB, 2022 U.S. Dist. LEXIS 60555 (D. Kan. 2022) .......... 1, 14

*Chambliss v. CareFirst, Inc.*, 189 F. Supp. 3d 564, 572 (D. Md. 2016) .......... 13

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) .......... 6, 8, 10

*Duqum v. Scottrade, Inc.*, No. 4:15-CV-1537-SPM, 2016 U.S. Dist. LEXIS 89992, at *8 (E.D. Mo. July 12, 2016) .......... 14

*Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC) Inc.*, 528 U.S. 167, 180-81 (2000) .......... 7

*Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998) .......... 3

*In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243, 1257 (M.D. Fla. 2019) .......... 12

*In re Barnes & Noble Pin Pad*, No. 12-cv-8617, 2013 U.S. Dist. LEXIS 125730, at *13 (N.D. Ill. 2013) .......... 12

*In re Facebook Privacy Litig.*, 572 F. App'x 494 (9th Cir. 2014) .......... 12

*In re Mednax Servs.*, No. 21-MD-02994-RAR, 2022 U.S. Dist. LEXIS 84453, at *24-25 (S.D. Fla. 2022) .......... 14

*In re Practicefirst Data Breach Litig.*, No. 1:21-CV-00790(JLS/MJR), 2022 WL 354544, at *8 (W.D.N.Y. Feb. 2, 2022) .......... 14

*In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 962 n.5 (D. Nev. 2015) .......... 14

*Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 533-34 (D. Md. 2016) .......... 12

*Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) .......... 6, 7

*Kuhns v. Scottrade, Inc.*, 868 F.3d 711 (8th Cir. 2017) .......... 14

*Lewis v. Casey*, 518 U.S. 343, 357 (1996) .......... 7

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) .......... 7

*MDPhysicians & Assocs., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) .......... 3

*O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) .......... 7

*Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (per curiam) .......... 10

*Peters v. St. Joseph Services Corp.*, 74 F. Supp. 3d 847 (S.D. Tex. 2015) .......... 15

*Provost v. Aptos, Inc.*, No. 17-02120, 2018 WL 1465766, at *4 (N.D. Ga. Mar. 12, 2018) .......... 12

*Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614-15 (9th Cir. 2021) .......... 11

*Rahman v. Marriott Int'l, Inc.*, No. SA CV 20-00654-DOC-KES, 2021 U.S. Dist. LEXIS 15155, at *6 (C.D. Cal. 2021) .......... 10

*Reilly v. Ceridian Corp.*, 664 F.3d 38, 46 (3d Cir. 2011) (internal quotations and citations omitted) .......... 10

*Salermo v. Watters*, 516 F. Supp. 3d 696 (S.D. Tex. 2021) .......... 8, 9

*Shenzhen Tange Li'An E-Commerce Co. v. Drone Whirl LLC*, No. 1:20-CV-00738-RP, 2021 U.S. Dist. LEXIS 147563, at *4 (W.D. Tex. 2021) .......... 3

*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n. 20 (1976) .......... 7

*Singh v. RadioShack Corp.*, 882 F.3d 137, 151 (5th Cir. 2018) .......... 7

*Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) .......... 6

*Spotts v. United States*, 613 F.3d 559, 566 (5th Cir. 2010) .......... 3

*Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1283-85 (M.D. Fla. 2016) .......... 12

*TransUnion LLC v. Ramierz*, 141 S. Ct. 2190 (2021) .......... 8

*Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981) .......... 3

# MOTION TO DISMISS

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant MedData, Inc. ("Defendant") files this Motion to Dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(h)(3) for lack of subject-matter jurisdiction. In support, Defendant shows the Court as follows:

## I.
## INTRODUCTION

This putative class action arises out of a data security incident that resulted in the inadvertent exposure of certain personal health data and personal identifying information ("PHI/PII"). In essence, Plaintiffs allege that the data security incident resulted in their private personal and health data being exposed to the public, placing them at an increased risk of identity theft and similar crimes. Although Defendant has answered, Federal Rule of Civil Procedure 12(h)(3) and the well-established common law allow a court to dismiss claims over which it lacks subject-matter jurisdiction at any time. This is such a case. Because Plaintiffs cannot demonstrate a substantial or certainly impending risk of future injury, and because they cannot manufacture standing by incurring costs in anticipation of non-imminent harms, Plaintiffs lack Article III standing and, therefore, this Court lacks subject-matter jurisdiction. Indeed, at least one other federal court has already held the same in a nearly identical matter arising out of this very same data security incident. *C.C. v. Med-Data Inc.*, No. 21-2301-DDC-GEB, 2022 U.S. Dist. LEXIS 60555 (D. Kan. 2022). There is no reason for this Court to hold any differently.

## II.
## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

Plaintiffs filed their Complaint on August 9, 2021 in the United States District Court for the Western District of Washington, asserting claims on behalf of a nationwide class (and for one claim, a Missouri subclass) related to the inadvertent disclosure of certain PHI/PII. (Pl.'s Compl. ¶¶ 1-2, 101, ECF No. 1.) On January 14, 2022, the Western District of Washington transferred the case to this Court based on Defendant's Motion to Change Venue for Forum Non Conveniens. (Order, ECF No. 31.)

Plaintiffs assert ten causes of action based on the data security incident: (1) negligence; (2) negligence per se; (3) breach of contract; (4) breach of an implied contract; (5) unjust enrichment; (6) negligent training and supervision; (7) invasion of privacy; (8) breach of fiduciary duty; (9) violation of Washington's Consumer Protection Act; and, on behalf of the Missouri subclass, (10) violation of the Missouri Merchandising Practices Act. (*Id.* at 26-42.) Plaintiffs also ask the Court for declaratory and injunctive relief, declaring that Defendant's cybersecurity measures are inadequate and ordering Defendant to take various corrective measures. (*Id.* at 43-45.) Defendant now moves to dismiss Plaintiffs' Complaint in its entirety because the Court lacks subject-matter jurisdiction due to Plaintiffs lack of Article III standing.

## III.
## STATEMENT OF THE ISSUES

The single issue to be determined is whether Plaintiffs lack Article III standing, where they have alleged only a theoretical, speculative risk of future harm, and where their

claimed economic losses arise only from their fear that they might encounter that speculative harm at some future, undefined point.

## IV.
## STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(h)(3)

A federal court properly dismisses a case or claim for lack of subject-matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the claims. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). Under Rule 12(h)(3), the objection that a federal court lacks subject-matter jurisdiction may be raised at any time by a party, or by the Court on its own initiative. *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006). Courts apply the standards developed under Rule 12(b)(1) to a motion filed under Rule 12(h)(3). *Shenzhen Tange Li'An E-Commerce Co. v. Drone Whirl LLC*, No. 1:20-CV-00738-RP, 2021 U.S. Dist. LEXIS 147563, at *4 (W.D. Tex. 2021).

In assessing subject-matter jurisdiction, the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Spotts v. United States*, 613 F.3d 559, 566 (5th Cir. 2010). The trial court is "free to weigh the evidence and satisfy itself" that subject-matter jurisdiction exists. *MDPhysicians & Assocs., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

# V.
# FACTS AND BACKGROUND

## A. A former Meddata employee mistakenly uploaded personal and/or health care data to GitHub, a public-facing website.

MedData is a national provider of revenue cycle management services for hospitals and healthcare systems. (Ex. 1, Briggs Dep. 7:25-10:14.) MedData necessarily utilizes patients' personal and health information obtained from its clients in order to provide these services. (*Id.* at 11:7-12:25.) This suit arises out of a data security incident resulting from a mistake made by Zulfiqar Faruqi ("Faruqi"), a former MedData software developer. (*Id.* at 14:21-15:17; Pls.' Compl. ¶¶ 1-2.) Between September 2019 and December 2020, Faruqi saved proprietary MedData source code to an online code repository that he created on GitHub.com, a platform used by software developers. (Ex. 2, Faruqi Aff. ¶ 4.) Unbeknownst to Faruqi at the time, the MedData source code files he saved to GitHub contained raw data that included various personal and health information data of approximately 135,000 patients of MedData's clients. (*Id.* at ¶¶ 5-6.)

## B. When MedData learned of the data security incident, MedData immediately investigated and notified the affected individuals about the breach.

On or about December 10, 2020, a journalist informed MedData that some of its data appeared to be on GitHub. (Ex. 1, Briggs Dep. 21:16-22:1.) MedData immediately launched an investigation. (*Id.* at 24:25-26:1.) After confirming the accuracy of the journalist's information, MedData had the source-code folders containing the raw data at issue removed from GitHub on or about December 17, 2020. (*Id.* at 21:18-22:25, 41:2-3.) MedData promptly retained public accounting, consulting, and technology firm, Crowe,

LLP, and cybersecurity consultant, Clark Hill, PLC, to aid in further investigation. (*Id.* at 27:18-28:14.) Among other things, Crowe worked to decipher the leaked data and parse it into readable formats so that MedData could notify the affected individuals. (*Id.*) Clark Hill conducted an investigation to determine whether the raw data uploaded to GitHub was available on the Dark Web. (*Id.* at 76:1-13.) Clark Hill's reconnaissance of the dark web found no indication that any of the raw data uploaded to GitHub had been accessed or placed on the dark web for sale. (*Id.*)

MedData then notified all potentially impacted persons. (*Id.* at 203:25-204:3, 206:7-18.) Both Plaintiffs received a letter dated March 31, 2021, from MedData notifying them of the above-referenced data security incident ("Notice Letter"). (Ex. 3, M.S. Dep. 20:3-18, Dep. Ex. "4"; Ex. 4, D.H. Dep. 15:16-16:14, Dep. Ex. "2.") The Notice Letter informed both Plaintiffs that the data involved "may have contained your name, Social Security number, physical address, date of birth, telephone number, and medical condition and diagnosis." (Notice Letter 1.) It further advised that MedData was "not aware of any misuse of your information . . ." and offered twelve months of free credit monitoring and identity protection services through a service called IDX. (*Id.* at 2.) In addition, MedData offered each Plaintiff a $1,000,000 insurance reimbursement policy and fully managed ID-theft recovery services at no cost. (*Id.*) The Notice Letter also suggested a variety of steps Plaintiffs could take to further protect themselves. (*Id.*) Although M.S. availed herself of these free services, D.H. chose not to because she did not trust a company recommended by MedData. (Ex. 3, M.S. Dep. 25:2-16; Ex. 4, D.H. Dep. 25:6-26:1.)

## VI.
## SUMMARY OF THE ARGUMENT

Plaintiffs lack Article III standing to bring a claim for either damages or declaratory or injunctive relief because they cannot demonstrate a substantial or certainly impending risk of future injury, and because they cannot manufacture standing by incurring costs in anticipation of non-imminent harms. And even if, for the sake of argument, any of the "actual damages" Plaintiffs' claim to have incurred are sufficiently concrete to support standing, they fail to meet the causation and redressability elements of standing. As such, whether the Court chooses to consider only the pleadings – as is its prerogative – or both the pleadings and the available evidence, it is clear that Plaintiffs lack Article III standing and this Court lacks subject-matter jurisdiction.

## VII.
## ARGUMENT AND AUTHORITIES

### A. Plaintiffs' do not have Article III standing.

"Article III of the Constitution limits federal courts' jurisdiction to certain Cases and Controversies." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal citations omitted). A suit brought by a plaintiff without Article III standing is not a case or controversy and deprives an Article III federal court of subject matter jurisdiction over the suit. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337 (2016) (internal citations omitted); *see also* Fed. R. Civ. P. 12(b)(1). Federal courts are courts of limited jurisdiction and must have statutory or constitutional power to adjudicate a claim. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (citations omitted). Absent jurisdiction conferred by statute or the Constitution, they lack the power to adjudicate claims and must dismiss an action if

subject matter jurisdiction is lacking. *Id.* A federal court must presume that an action lies outside its limited jurisdiction, and the burden of establishing that the court has subject matter jurisdiction to entertain an action rests with the party asserting jurisdiction. *Id.* (citations omitted).

Article III standing involves three primary considerations and requires the plaintiff to show that: (1) he or she has suffered an injury that is both concrete and particularized and actual or imminent ("injury in fact"); (2) that the injury is fairly traceable to the challenged conduct (causation); and (3) the injury is capable of being redressed by a favorable decision (redressability). *Friends of the Earth, Inc. v. Laidlaw Env't. Servs. (TOC) Inc.*, 528 U.S. 167, 180-81 (2000); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (explaining that standing must be satisfied as to each particular injury). All three elements are "an indispensable part of the plaintiff's case," and the party seeking to invoke federal jurisdiction bears the burden to establish them. *Lujan*, 504 U.S. at 561.

The requirements of standing remain the same in the class-action context. The named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified, members of the class they purport to represent. *See Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 40 n.20 (1976); *Singh v. RadioShack Corp.*, 882 F.3d 137, 151 (5th Cir. 2018). "Moreover, if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494 (1974).

Here, Plaintiffs separate their alleged damages into five categories: (1) "[t]ime and expense from identity protection and credit monitoring services"; (2) "[d]iminution in value of personal information"; (3) "[i]njury from third party's use of the personal information"; (4) "[d]ignitary harm"; and (5) "[e]motional distress." (Ex. 5, M.S.'s Resp. Def.'s Interrog. No. 1; Ex. 6, D.H.'s Resp. Def.'s Interrog. No. 1.) As explained below, each of these fail one or more of the three requirements of standing.

### 1. Plaintiffs' have not suffered an injury in fact.

The Supreme Court in *TransUnion LLC v. Ramierz*, 141 S. Ct. 2190 (2021), recently explained that "[a] plaintiff must demonstrate standing separately for each form of relief sought" to meet Article III's injury-in-fact standing requirement. Accordingly, "a plaintiff's standing to seek injunctive relief does not necessarily mean that the plaintiff has standing to seek retrospective damages." *Id.* at 2210. Regarding injunctive relief, "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *Id.*, citing *Clapper*, 568 U.S. at 410 (2013) (to confer standing, the risk of future injury must be "certainly impending"). However, "in a suit for damages, the mere risk of future harm, standing alone, cannot qualify as a concrete harm – at least unless the exposure to the risk of future harm itself causes a separate concrete harm." *Id.* at 2210-11.

This Court analyzed the injury-in-fact criterion of Article III standing in *Salermo v. Watters*, 516 F. Supp. 3d 696 (S.D. Tex. 2021) (Eskridge, J.), as follows:

> The Supreme Court has often summarized that this requires a plaintiff to show "that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized'

> and 'actual or imminent, not conjectural or hypothetical.'" These are each a distinct requirement.
>
> For an injury to be concrete means that it is practical and developed, rather than "intellectual" and "abstract." Only injuries of that kind support a "concrete, living contest between adversaries" and warrant "the arbitrament of law." Said another way, a "concrete injury is, like it sounds, 'real and not abstract.'"
>
> For an injury to be particularized means that it "must affect the plaintiff in a personal and individual way." Among other characteristics, the injury must be one that personally harms the plaintiff and in which she has "a direct stake in the outcome."
>
> And for an injury to be actual or imminent means that allegations of "possible future injury" are insufficient. A plaintiff has standing only where she's already suffered a legally recognized injury or where there is an impending danger or substantial risk that she'll suffer such an injury.

*Id.* at 704-05 (internal citations omitted).

Plaintiffs in this case cannot satisfy the injury-in-fact requirement because their alleged harm is far too speculative. Plaintiffs' claim that "[d]ue to Defendant's negligence and data security failures, cyber criminals had access to and now *potentially possess* everything they need to commit personal and medical identity theft . . ." and that ". . . now that their PHI and PII has been released into the criminal cyber domains, Plaintiffs and Class members are . . . now forced to deal with *the danger of* identity thieves possessing and fraudulently using their PHI and PII." (Pls.' Compl. ¶¶ 9-10 (emphasis added).)

**(a.) Plaintiffs' alleged time and expense from identity protection and credit monitoring services does not constitute an injury in fact.**

A plaintiff cannot "manufacture standing merely by inflicting harm on themselves based on their fears of hypothetical future harm that is not certainly impending." *Clapper*,

568 U.S. at 416 (citing *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (per curiam). In other words, "costs incurred to watch for a speculative chain of future events based on hypothetical future criminal acts are no more actual injuries than the alleged increased risk of injury." *Reilly v. Ceridian Corp.*, 664 F.3d 38, 46 (3d Cir. 2011) (internal quotations and citations omitted). The focus is not upon the reasonableness of the fears but upon the imminence of the future harm and whether it is certainly impending, or the risk of harm is substantial. *Clapper*, 568 U.S. at 416. Without imminent harm, mitigation expenses do not meet the injury in fact requirement of standing. *Id. See also, Rahman v. Marriott Int'l, Inc.*, No. SA CV 20-00654-DOC-KES, 2021 U.S. Dist. LEXIS 15155, at *6 (C.D. Cal. 2021) ("As the Supreme Court has said, 'mitigation costs . . . rise and fall together' with claims based on the risk of future harm." (quoting *Clapper*, 568 U.S. at 402)).

Here, M.S. claims to have spent $161.96 to have a computer technician remove spyware from her computer following learning of the data security incident and $16.11 for a yearly subscription to RoboKiller – a service she claims blocks spam calls. (Ex. 5, M.S.'s Resp. Def.'s Interrog. No. 1.) M.S. testified that she really did not know exactly why she had someone come to look at her computer – but that it had something to do with an incident a few days prior, where she believed the wrong medical transport arrived to take her home from her doctor's office. (Ex. 3, M.S. Dep. 43:8-46:12.) The computer technician did not tell M.S. what kind of spyware he found on her computer, when it was put on her computer, or from where he thought it might have come. (*Id.* at 45:21-46:12.) M.S. admits she has no knowledge or evidence that the computer technician's findings had anything to do with Defendant:

Q. Okay. Let's see here. Do you have any reason to think that that spyware has anything to do with the letter you got from Med-Data?

**A. It might. It might not. I don't know.**

(*Id.* at 46:6-9.)

The other named Plaintiff, D.H., claims *no quantified damages at all*. (Ex. 6, D.H.'s Resp. Def.'s Interrog. No. 1.) Although they do both generally claim to have spent several hours monitoring their credit reports and accounts, neither provides evidence of any actual injury. (*E.g.*, Ex. 5, M.S.'s Resp. Def.'s Interrog. No. 1; Ex. 6, D.H.'s Resp. Def.'s Interrog. No. 1. *See generally*, Pls.' Compl.) Furthermore, M.S. testified that this was something she already did as a matter of course before the data security incident even occurred. (Ex. 3, M.S. Dep. 67:1-12.)

Plaintiffs have failed to sufficiently allege that they are at an imminent risk of future harm as a result of the data security incident. Accordingly, Plaintiffs' claimed injury from incurring mitigation costs is insufficient as a matter of law to establish Article III standing.

**(b.) Plaintiffs' alleged "diminution in value" of their personal information does not constitute an injury in fact.**

To successfully plead an injury related to the diminution in value of personal information, a plaintiff must establish the existence of a market for the personal information and an impairment of the ability to participate in that market. *See Pruchnicki v. Envision Healthcare Corp.*, 845 F. App'x 613, 614-15 (9th Cir. 2021) (holding that allegations of diminution of value of personal information were insufficient to establish the damages element for her state law claims, and explaining that although the plaintiff cited

studies establishing that personal information may have value in general, the plaintiff "failed to adequately allege that her personal information actually lost value" and the "mere misappropriation of personal information does not establish compensable damages."); *In re Facebook Privacy Litig.*, 572 F. App'x 494 (9th Cir. 2014). In other words, an actual injury is not established unless the plaintiff could have sold her own information, but was deprived of that opportunity by an interlopers' theft and sale of that information, via a data breach. *See In re Barnes & Noble Pin Pad*, No. 12-cv-8617, 2013 U.S. Dist. LEXIS 125730, at *13 (N.D. Ill. 2013).

Although the Fifth Circuit has not directly addressed this issue, many other courts join in this viewpoint. *See In re 21st Century Oncology Customer Data Sec. Breach Litig.*, 380 F. Supp. 3d 1243, 1257 (M.D. Fla. 2019) ("The Court rejects [the diminished value] theory of injury in fact because Plaintiffs have not alleged that their personal information has an independent monetary value that is now less than it was before the Data Breach."); *Torres v. Wendy's Co.*, 195 F. Supp. 3d 1278, 1283-85 (M.D. Fla. 2016) (holding that allegations of diminished value of PII following a data breach are insufficient for Article III standing); *Provost v. Aptos, Inc.*, No. 17-02120, 2018 WL 1465766, at *4 (N.D. Ga. Mar. 12, 2018) ("The Court is not persuaded by the hypothetical diminution of value propounded by Plaintiff. Plaintiff has failed to allege with particularity any facts explaining how her personal identity information is less valuable than it was before the Breach."); *Khan v. Children's Nat'l Health Sys.*, 188 F. Supp. 3d 524, 533-34 (D. Md. 2016) (holding that alleged diminished value of PII did not establish standing when plaintiff failed to "explain how the hackers' possession of that information has diminished its value, . . . [or]

assert that she would ever actually sell her own personal information"); *Chambliss v. CareFirst, Inc.*, 189 F. Supp. 3d 564, 572 (D. Md. 2016) (similar).

Here, Plaintiffs claim that "[b]ecause [their] personal information was made available to third parties for free, [they have] experienced a loss of value equal to the market value of that information." (Ex. 5, M.S.'s Resp. Def.'s Interrog. No. 1; Ex. 6, D.H.'s Resp. Def.'s Interrog. No. 1.) Plaintiffs do not claim that they intended to sell (or could have sold) their PII/PHI, nor do they know whether any part of their information has been sold. (Ex. 3, M.S. Dep. 70:10-15; Ex. 4, D.H. Dep. 65:18-22, 72:11-13.) Rather, Plaintiffs speculate as to how certain occurrences (which caused them no damage) could have happened, and then summarily conclude that their PII/PHI must have been obtained from the data thieves. These assertions fail to set forth an "actual injury" sufficient to confer standing. Because there is no actual injury, there is no standing based on alleged diminution of the value of Plaintiffs' information.

**(c.) Plaintiffs' alleged "dignitary harm" does not constitute an injury in fact.**

Plaintiffs claim that they have "lost the opportunity to control how her sensitive personal information is used [and that their] expectations of privacy were frustrated and defeated." (Ex. 5, M.S.'s Resp. Def.'s Interrog. No. 1; Ex. 6, D.H.'s Resp. Def.'s Interrog. No. 1.) Once again, Plaintiffs fail to present evidence of any damages sufficient to confer standing.

Plaintiffs are unable to show an injury in fact from any alleged invasion of privacy. Indeed, the United States District Court for the District of Kansas held as such in another

lawsuit resulting from this very same data security incident. *See C.C. v. Med-Data Inc.*, No. 21-2301-DDC-GEB, 2022 U.S. Dist. LEXIS 60555, at *26 (D. Kan. 2022) (citing *In re Practicefirst Data Breach Litig.*, No. 1:21-CV-00790(JLS/MJR), 2022 WL 354544, at *8 (W.D.N.Y. Feb. 2, 2022) ("[E]ven if plaintiffs could plead facts sufficient to allege the tort of public disclosure of private information, the Court would still find a lack of subject matter jurisdiction here. Indeed, this theory of standing has been rejected in the data breach context where, like in this case, plaintiffs have failed to demonstrate any concrete or particularized injury associated with the disclosure."); *see also Duqum v. Scottrade, Inc.*, No. 4:15-CV-1537-SPM, 2016 U.S. Dist. LEXIS 89992, at *8 (E.D. Mo. July 12, 2016), *aff'd sub nom., Kuhns v. Scottrade, Inc.*, 868 F.3d 711 (8th Cir. 2017) ("Plaintiffs do not allege any facts demonstrating that they suffered any damages or injury due to a loss of privacy or breach of confidentiality. These theories are not sufficiently concrete to establish injury in fact and do not support standing in this case."); *In re Zappos.com, Inc.*, 108 F. Supp. 3d 949, 962 n.5 (D. Nev. 2015) ("Even if Plaintiffs adequately allege a loss of privacy, they have failed to show how that loss amounts to a concrete and particularized injury.")). This Court should hold the same in the instant case.

**(d.) Plaintiffs' alleged emotional distress does not constitute an injury in fact.**

Although the Fifth Circuit has not addressed this issue either, others have held that emotional distress can only support standing in data-breach cases when it is coupled with a showing of a substantial risk of future harm. *See In re Mednax Servs.*, No. 21-MD-02994-RAR, 2022 U.S. Dist. LEXIS 84453, at *24-25 (S.D. Fla. 2022) ("Plaintiffs have

established that their risk of future harm is substantial and imminent. Thus, the question in this case is not whether Plaintiffs' allegations of emotional distress, on their own, are sufficiently concrete to establish injuries in fact. Instead, it is whether allegations of emotional distress, coupled with the substantial risk of future harm, are sufficiently concrete to establish standing in a claim for damages.") But here, as previously discussed, Plaintiffs have not – and cannot – show that they are at "a substantial risk of future harm." Therefore, emotional distress is not a sufficiently concrete injury to support standing.

**2. Plaintiffs' alleged injuries are neither fairly traceable to the challenged conduct nor capable of being redressed by a favorable decision.**

In *Peters v. St. Joseph Services Corp.*, 74 F. Supp. 3d 847 (S.D. Tex. 2015), a patient who received a data breach notification from a health care service provider claimed that after the breach: (1) someone attempted to make a fraudulent purchase on her credit card that she used with the health care provider; (2) someone attempted to access her Amazon.com account using her son's name, which "could only have been obtained from names and next-of-kin information she provided to St. Joseph"; (3) she began receiving "daily telephone solicitations from medical products and services companies" asking "to speak with specific family members, whose contact information is recorded in her personal information"; and (4) her e-mail and mailing addresses had been compromised. *Id.* at 850-51. This Court held that these incidents, which the patient identified "as evidence of actual identity theft/fraud," "failed to meet the causation and redressability elements of the standing test." *Id.* at 857. Specifically, the patient's claim lacked causation because she



272694123v.3

failed to "account for [a] sufficient break in causation caused by opportunistic third parties." *Id.*

Like in *Peters*, Plaintiffs here also fail to meet the causation and redressability elements. Both Plaintiffs have been deposed and responded to written discovery – yet neither were able to produce any evidence of an injury that meets all three elements of the test for standing. Plaintiffs identify five categories of damages they allege to have suffered: (1) "[t]ime and expense from identity protection and credit monitoring services"; (2) "[d]iminution in value of personal information"; (3) "[i]njury from third party's use of the personal information"; (4) "[d]ignitary harm"; and (5) "[e]motional distress." (Ex. 5, M.S.'s Resp. Def.'s Interrog. No. 1; Ex. 6, D.H.'s Resp. Def.'s Interrog. No. 1.) But, in addition to failing to plead and/or show an injury in fact – any of these alleged damages that may, for the sake of argument, be sufficiently concrete to support standing, fail one or both of the remaining two elements of the test for standing, i.e., causation and redressability.

Specifically, M.S. claims that she "has received an increased number of spam phone calls since the breach. She estimates that she was receiving multiple spam calls every day, a frequency that is higher than before the breach, until she purchased RoboKiller to filter the calls. In March 2022, [M.S.] also received a notification that someone was attempting to fill a fraudulent tax return using her information." (Ex. 5, M.S.'s Resp. Def.'s Interrog. No. 1.) M.S. also claims (with no supporting evidence) that Defendant is to blame for an incident involving a mix-up with her medical transportation from a doctor's office. (Ex. 3, M.S. Dep. 33:10-34:1, 39:7-39:23.)

Similarly, D.H. claims that she "has received an increased number of spam phone calls and emails since the breach. She estimates that she now receives at least five calls per week, a frequency that is higher than before the breach." (Ex. 6, D.H.'s Resp. Def.'s Interrog. No. 1.)

But neither Plaintiff is able to provide any proof regarding the causation of these speculative "injuries." M.S. testified:

> Q. The suspicious things that we talked about, those four suspicious things, do you have any reason to think they're related to Med-Data and not the -- you know, we saw your social security number on Exhibit 2. It was filed with the Bankruptcy Court. **Any reason for you to believe it's one thing instead of the other that led to those suspicious things?**
>
> **A. No.**
>
> Q. The -- those four suspicious things that we talked about, the -- they could have been related to the bankruptcy filing that has your social security number on it in Exhibit 2; is that correct?
>
> A. I don't know.

(Ex. 3, M.S. Dep. 68:2-16.) Similarly, D.H. testified:

> Q. Okay. **And do you assume that every spam phone call you receive is related to the Med-Data incident?**
>
> **A. I can't speculate to that. I don't know.**

(Ex. 4, D.H. Dep. 74:10-13.) D.H. could not estimate how many spam calls she received that week, the prior week, or per week. (*Id.* at 71:21-72:2.) She also claimed not to know whether she had ever received a spam call prior to December 2018. (*Id.* at 72:8-10.) Even when asked if she could commit to whether the alleged increase in spam calls was greater

than two calls year over year, she "didn't know." (*Id.* at 74:5-9.) Thus, Plaintiffs fail to allege facts or provide any evidence that their claims meet the causation and redressability elements of the standing test.

## VIII.
## CONCLUSION AND PRAYER

Plaintiffs lack Article III standing to bring a claim for either damages or declaratory or injunctive relief because they cannot demonstrate a substantial or certainly impending risk of future identity theft or other injury, and because they cannot manufacture standing by incurring costs in anticipation of non-imminent harms. As such, Plaintiffs lack Article III standing and, therefore, this Court lacks subject-matter jurisdiction. Absent subject-matter jurisdiction, this matter must be dismissed.

WHEREFORE, PREMISES CONSIDERED, Defendant asks that the Court dismiss all of Plaintiffs' causes of action, with prejudice, and for any and all other relief to which it is justly entitled.

[signature on following page]

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**

By: *<u>/s/Ethan Carlyle</u>*

Ethan D. Carlyle
State Bar No. 24031794
Southern District No. 30741
ethan.carlyle@wilsonelser.com
909 Fannin St., Suite 3300
Houston, Texas 77010
Tel: (713) 353-2000
Fax: (713) 785-7780

**ATTORNEY-IN-CHARGE FOR DEFENDANT MED-DATA, INC.**

**OF COUNSEL:**

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**

Michael F. Webb
State Bar No. 24118218
S.D. Tex. No. 3586792
michael.webb@wilsonelser.com
909 Fannin St., Suite 3300
Houston, Texas 77010
Tel: (713) 353-2000
Fax: (713) 785-7780

## CERTIFICATE OF WORD COUNT

I hereby certify that this document complies with Rule 18 of this Court's Procedures, being 4,860 words, exclusive of the case caption, table of contents, table of authorities, signature block, and certificates.

*/s/Ethan D. Carlyle*
Ethan D. Carlyle

**CERTIFICATE OF SERVICE**

I hereby certify that on August 31, 2022, a true and correct copy of the foregoing instrument was delivered to all parties and counsel of record in accordance with the Federal Rules of Civil Procedure.

*/s/Ethan D. Carlyle*
Ethan D. Carlyle