**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION**

| | |
|---|---|
| M.S. and D.H., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MEDDATA, Inc.,<br><br>Defendant. | Case No. 4:22-cv-00187<br><br>Hon. Charles Eskridge |

**PLAINTIFFS' OPPOSITION TO DEFENDANT MEDDATA, INC.'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION**

# TABLE OF CONTENTS

I. BACKGROUND ..... 1
II. STATEMENT OF FACTS ..... 2
III. PLAINTIFFS HAVE ARTICLE III STANDING ..... 3
A. Legal Standards ..... 3
B. Plaintiffs Have Suffered Injury-In-Fact ..... 4
1. Plaintiffs' Identity Theft and Data Misuse Constitutes Injury-In-Fact ..... 4
2. Plaintiffs' Increased Risk of Future Identity Theft Establishes Injury-In-Fact ..... 6
3. Plaintiffs' Loss of Privacy Establishes Injury-In-Fact ..... 9
4. Plaintiffs' Time and Expense from Identity Protection and Credit Monitoring Services Constitutes Injury-in-Fact ..... 11
5. Plaintiffs' Diminution in Value of their Personal Information Constitutes Injury in Fact ..... 13
6. Plaintiffs' Emotional Distress Constitutes Injury-in-Fact ..... 15
C. Plaintiffs' Injuries Are Fairly Traceable to the Challenged Conduct ..... 16
D. Plaintiffs' Injuries are Capable of Being Redressed by this Court ..... 18
IV. CONCLUSION ..... 19

# TABLE OF AUTHORITIES

**Cases**

*Attias v. Carefirst, Inc.*,
865 F.3d 620 (D.C. Cir. 2017) .......... 6

*Baldwin v. Nat'l W. Life Ins. Co.*,
No. 2:21-CV-04066, 2021 WL 4206736 (W.D. Mo. Sept. 15, 2021) .......... 8

*Beck v. McDonald*,
848 F.3d 262 (4th Cir. 2017) .......... 7

*C.C. v. Med-Data Inc.*,
No. 21-2301-DDC-GEB, 2022 WL 970862 (D. Kan. Mar. 31, 2022) .......... 11

*Cahen v. Toyota Motor Corp.*,
147 F. Supp. 3d 955 (N.D. Cal. 2015) .......... 7

*Captiva MVP Rest. Partners, LLC*,
986 F.3d 1332 (11th Cir. 2021) .......... 6, 7

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) .......... 3, 4

*Clemens v. ExecuPharm Inc.*,
48 F.4th 146 (3d Cir. 2022) .......... 9

*Cotter v. Checkers Drive-In Rests., Inc.*,
No. 8:19-CV-1386, 2021 WL 3773414 (M.D. Fla. Aug. 25, 2021) .......... 8

*Dieffenbach v. Barnes & Noble, Inc.*,
887 F.3d 826 (7th Cir. 2018) .......... 12

*Doe v. Chao*,
540 U.S. 614 (2004) .......... 9

*Doe v. Partridge*,
No. A-08-CA-261 LY, 2008 WL 11411234 (W.D. Tex. May 28, 2008) .......... 10

*Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*,
No. 3:16-cv-00014-GPC-BLM, 2016 WL 6523428 (S.D. Cal. Nov. 3, 2016) .......... 7

*Finesse Express, LLC v. Total Quality Logistics, LLC*,
No. 1:20CV235, 2021 WL 1192521 (S.D. Ohio Mar. 30, 2021) .......... 18

*Galaria v. Nationwide Mut. Ins. Co.*,
663 F. App'x 384 (6th Cir. 2016) ..................................................................5, 18

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*,
892 F.3d 613 (4th Cir. 2018)........................................................................5, 6

*In re Anthem, Inc. Data Breach Litigation* ("Anthem, II"), 2016 WL 3029783 (N.D. Cal. May 27, 2016) .........................................14

*In re Blackbaud, Inc., Customer Data Breach Litig.*,
No. 3:20-MN-02972, 2021 WL 2718439 n.15 (D.S.C. July 1, 2021) .........................8, 9

*In re Facebook Privacy Litigation*,
572 Fed. Appx. 494 (9th Cir. 2014) ...............................................................14

*In re GE/CBPS Data Breach Litig.*,
No. 20 Civ. 2903, 2021 WL 3406374 (S.D.N.Y. Aug. 4, 2021) ....................................8

*In re Horizon Healthcare Servs. Inc. Data Breach Litig.*,
846 F.3d 625 (3d Cir. 2017)........................................................................6, 9

*In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*,

*No. 21-MD-02994-RAR, 2022 WL 1468057 (S.D. Fla. May 10, 2022)....................9, 16*

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
996 F. Supp. 2d 942 (S.D. Cal. 2014) ..............................................................6

*In re SuperValu, Inc.*,
870 F.3d 763 (8th Cir. 2017)........................................................................7, 18

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
No. 16-MD-02752-LHK, 2017 WL 3727318 (N.D. Cal. Aug. 30, 2017)....................15

*Inc., Customer Data Sec. Breach Litig.*,
440 F. Supp. 3d 447 (D. Md. 2020) ..................................................12, 14, 15

*Katz v. Pershing, LLC*,
672 F.3d 64 (1st Cir. 2012) ..........................................................................7

*Krottner v. Starbucks Corp.*,
628 F.3d 1139 (9th Cir. 2010).......................................................................6

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
572 U.S. 118 (2014) ...................................................................................17

*Louisiana v. Centers for Disease Control & Prevention*,
No. 6:22-CV-00885, 2022 WL 1604901 (W.D. La. May 20, 2022) ............................. 4

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) ............................................................................ 4, 11, 18

*Mastel v. Miniclip SA*,
No. 221CV00124, 2021 WL 2983198 (E.D. Cal. July 15, 2021) .................................. 8

*McMorris v. Carlos Lopez & Assocs., LLC*,
995 F.3d 295 (2d Cir. 2021) ..................................................................... 7

*Perrill v. Equifax Info. Servs., LLC*,
205 F. Supp. 3d 869 (W.D. Tex. 2016) ....................................................... 10, 17

*Peters v. St. Joseph Servs. Corp.*,
74 F. Supp. 3d 847 (S.D. Tex. 2015) ......................................................... 17

*Remijas v. Neiman Marcus Grp., LLC*,
794 F.3d 688 (7th Cir. 2015) .................................................................. 17

*Resnick v. AvMed, Inc.*,
693 F.3d 1317 (11th Cir. 2012) ........................................................... 5, 16, 17

*Salermo v. Hughes Watters & Askanase LLP*,
516 F. Supp. 3d 696 (S.D. Tex. 2021) ...................................................... 5, 16

*Silver v. Stripe Inc.*,
No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. July 28, 2021) ..................... 9

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................................................... 4, 6

*Stasi v. Immediata Health Grp. Corp.*,
501 F. Supp. 3d 898 (S.D. Cal. 2020) ...................................................... 10, 11

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) ........................................................................... 4

*Svenson v. Google, Inc.*,
2015 WL 1503429 (N.D. Cal. Apr. 1, 2015) ................................................ 14, 15

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ...................................................................... 8, 9, 10

Plaintiffs M.S. and D.H. ("Plaintiffs") respectfully submit this opposition to Defendant MedData, Inc.'s Motion to Dismiss for Lack of Subject-Matter Jurisdiction ("Def's Mtn."). Because Plaintiffs have suffered numerous injuries-in-fact and thus have Article III standing, Defendant's motion should be denied.[1]

## I. BACKGROUND

MedData, Inc. ("MedData" or "Defendant") is a company that provides healthcare revenue cycle management services to healthcare facilities nationwide. In order to provide these services, MedData takes possession of its clients' patients' protected health information ("PHI").[2] Plaintiffs and Class Members received medical services from clients of Defendant. To receive medical services, Plaintiffs and members of the Class provided their PHI, with the expectation it would be kept confidential and secure. This reasonable expectation turned out to be wrong.

In March 2021, Plaintiffs were notified by MedData that it had saved files containing their PHI on a public-facing website, GitHub ("Healthcare Data Breach" of "Breach"). *See* Complaint ("Compl."), ¶¶14, 25 (ECF No. 1). Based in the harms caused by this Breach, Plaintiffs filed their Complaint, asserting claims on behalf of themselves, a nationwide class, and a Missouri subclass.

---

[1] Additionally, Defendant's motion should be denied for failing to meet and confer with Plaintiffs. *See* Court's Procedures at Section 17(a).

[2] "PHI" is inclusive of personally identifiable information ("PII") and is used hereto to encompass both.

MedData now contends Plaintiffs have not alleged an injury-in-fact sufficient to support a finding of Article III standing. MedData is wrong.

## II. STATEMENT OF FACTS

From December 2018 to September 2019, a MedData employee, Zulfiqar Faruqi, uploaded a substantial amount of data, in plaintext EDI file format, to the public website GitHub. *Id.* This data contained the PHI of over 135,000 patients, including names, Social Security numbers, dates of birth, telephone numbers, medical conditions, and treatments. *Id.* This sensitive PHI remained publicly available on GitHub for more than a year until December 17, 2020. *Id*.

It was not until, Jelle Ursem, a member of the Dutch Institute for Vulnerability Disclosure, alerted MedData that he had found the PHI on GitHub that MedData took any action. Ex. 1 (Ursem Decl.), ¶¶1-3. According to Mr. Ursem, the PHI was "not encrypted and [] had no password or other forms of protection." *Id.*, ¶5. Even after Mr. Ursem contacted MedData to advise it of this massive unauthorized PHI disclosure, MedData's Chief Information Officer, Tony Briggs, entirely ignored Mr. Ursem's warnings without bothering to even check into the matter. *Id.*, ¶11.

After December 10, 2020, when Mr. Ursem found someone at MedData who decided to acknowledge his warnings, MedData launched an investigation and removed the PHI from GitHub. As part of its investigation, MedData requested that GitHub provide daily access records, including daily fetch and page views, for the PHI posted on GitHub. These access logs show that the PHI ***was viewed thousands of times*** and even ***"cloned"***

***thirty-five times*** by unknown and unauthorized individuals before MedData removed the files. *See* Ex. 2 (discussing 35 unexplained instances where data was "cloned"); Ex. 3 (reflecting data being accessed thousands of times by unknown individuals ***after*** Mr. Faruqi's employment ended in September 2019);[3] Ex. 4 ("From the limited logs provided [by GitHub], it appeared that third parties may have accessed the data.").

According to MedData, Plaintiffs' PHI was exposed in the Healthcare Data Breach. *See* Compl, ¶¶14, 25. As a result, Plaintiffs have suffered multiple injuries. Both Plaintiffs have experienced identity theft, data misuse, and the substantial risk of future harm. Both Plaintiffs have incurred expenses and/or lost time in their attempts to mitigate the harms caused by the Breach. Further, both Plaintiffs have experienced a loss of privacy and emotional distress as a result of this Breach. *See* Ex. 5 (M.S.'s Resp. to Interrog. No. 1) at 2; Ex. 6 (M.S. Dep. 48:2-49:14; 71:6-13); Ex. 7 (D.H. Dep. 16:22-17:17; 67:10-68:8); Ex. 8 (D.H.'s Resp. to Interrog. No. 1) at 2; Compl., ¶¶16-29.

## III. <u>PLAINTIFFS HAVE ARTICLE III STANDING</u>

### A. <u>Legal Standards</u>

To establish Article III standing, three requirements must be met: (1) an injury that is "concrete, particularized and actual or imminent; (2) the injury must be "fairly traceable to the challenged action"; and (3) the injury must be "redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citation omitted).

[3] In Ex. 3, cells populated with "TRUE" reflect and instance of cloning as is evident in the native Excel version of this document.

"At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (citation omitted).

"Only one party with standing is required to establish Article III jurisdiction. Accordingly, only one of the Plaintiff . . . need establish standing for the Court to grant relief." *Louisiana v. Centers for Disease Control & Prevention*, No. 6:22-CV-00885, 2022 WL 1604901, at *10 (W.D. La. May 20, 2022).

### B. <u>Plaintiffs Have Suffered Injury-In-Fact</u>

To establish injury-in-fact, "a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). An injury is particularized if it "affect[s] the plaintiff in a personal and individual way." *Id.* at 339 (internal citation omitted).

Intangible injuries like the threat of future injury may be concrete. *Id.* "An allegation of future injury may suffice if the threatened injury is 'certainly impending,' or there is a "'substantial risk" that the harm will occur.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper* 568 U.S. at 414 n.5 (2013)).

#### 1. Plaintiffs' Identity Theft and Data Misuse Constitutes Injury-In-Fact

Plaintiffs sufficiently allege injury-in-fact based on the theft and misuse of their identities following the Healthcare Data Breach.

Plaintiffs allege that their PHI, including names, dates of birth, Social Security numbers, and medial information were publicly available to for more than a year's time. Compl. ¶¶1-2. Plaintiffs further allege that their PHI was misused directly following the Breach. For example, since the breach, Plaintiff M.S. has received a notification that an unknown person attempted to file a fraudulent tax return on her behalf. *See* Ex. 5 (M.S.'s Resp. to Interrog. No. 1). Similarly, Plaintiff D.H. has experienced suspicious activity with her financial accounts since the start of the Breach. *See* Ex. 6 (D.H. Dep. at 16:22-17:17). Moreover, both Plaintiffs have experienced a marked increasing spam calls after the data breach. *See id.*; Ex. 5 at 2; Ex. 8 at 2. The number of spam calls were so significant that Plaintiff M.S. resorted to purchasing a call screening service. Ex. 6 (M.S. Dep. 48:2-49:14). Accordingly, Plaintiffs have adequately alleged that they suffered identity theft and misuse of their PII as a result of the Breach.

The misuse of sensitive identifying data ***alone*** is sufficient to confer standing. *See Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (holding that the misuse of plaintiff's sensitive information to open a bank account was sufficient to confer standing even though she did not allege any "unreimbursed losses"); *see also Galaria v. Nationwide Mut. Ins. Co.*, 663 F. App'x 384, 388 (6th Cir. 2016) (finding injury-in-fact for data breach case and defining "actual misuse" as a "fraudulent charge"). Quite simply, where fraudsters have attempted to use plaintiffs' personal information, "there is no need to speculate on whether substantial harm will befall the Plaintiffs." *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*, 892 F.3d 613, 622 (4th Cir. 2018); *Salermo v. Hughes Watters & Askanase*

*LLP*, 516 F. Supp. 3d 696, 707 (S.D. Tex. 2021) (Eskridge, J.) (finding that the "harm (or its potentiality) needn't necessarily be of financial injury, because *concrete* isn't 'necessarily synonymous with tangible.'") (quoting *Spokeo*, 136 S. Ct. at 1549).

Indeed, the Federal Trade Commission ("FTC") defines identity theft as "a fraud committed or attempted ***using the identifying information of another person without authority***." 17 C.F.R. § 248.201 (2013) (emphasis added). Thus, the unauthorized use of someone's confidential identifying information, like the attempted fraudulent tax return, fraudulent financial account activity, and increased spam calls experienced by Plaintiffs, ***is identity theft***.

Plaintiffs have alleged injury-in-fact based on the misuse of their PHI.

**2. Plaintiffs' Increased Risk of Future Identity Theft Establishes Injury-In-Fact**

The "increased risk of future identity theft" suffices to establish a substantial risk of impending harm for purposes of Article III standing. *See generally Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332 (11th Cir. 2021); *Examiners in Optometry, Inc.*, 892 F.3d 613 (4th Cir. 2018); *Attias v. Carefirst, Inc.*, 865 F.3d 620 (D.C. Cir. 2017); *Tsao v.*; *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625 (3d Cir. 2017); *Krottner v. Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010). Moreover, courts have "routinely denied motions to dismiss based on Article III standing where a plaintiff alleges that his personal information was collected and then wrongfully disclosed." *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 962 (S.D. Cal. 2014).

While the Fifth Circuit has not yet ruled on this issue, ***every*** Circuit Court that has considered the issue recognized that increased risk of harm from a data breach, even without known data misuse, can create standing under the right circumstances. As the Second Circuit recently explained in *McMorris v. Carlos Lopez & Assocs., LLC*, 995 F.3d 295 (2d Cir. 2021) when considering standing based on risk of future identity theft:

> Some courts have suggested that there is a circuit split on the issue. *See, e.g., Tsao v. Captiva MVP Rest. Partners, LLC*, 986 F.3d 1332, 1340 (11th Cir. 2021); *Beck v. McDonald*, 848 F.3d 262, 273–74 (4th Cir. 2017); *Katz v. Pershing, LLC*, 672 F.3d 64, 80 (1st Cir. 2012). ***But in actuality, no court of appeals has explicitly foreclosed plaintiffs from establishing standing based on a risk of future identity theft – even those courts that have declined to find standing on the facts of a particular case.*** *See, e.g., In re SuperValu, Inc.*, 870 F.3d 763, 773 (8th Cir. 2017) (declining to hold that "evidence of misuse following a data breach is necessary for a plaintiff to establish standing" despite finding that certain plaintiffs lacked standing); *see also Tsao*, 986 F.3d at 1343 ("Of course, as our sister Circuits have recognized, evidence of actual misuse is not necessary for a plaintiff to establish standing following a data breach.").

*Id.* at 300 (emphasis added).

Here, the lengthy public disclosure, the sensitive nature of the PHI (including Social Security numbers), the fact that unknown actors repeatedly accessed and even went to the trouble to ***copy*** the PHI is enough to establish a substantial risk of impending injury. *See Cahen v. Toyota Motor Corp.*, 147 F. Supp. 3d 955, 972 (N.D. Cal. 2015) (noting that "widespread accidental publication of sensitive personally identifying information" is sufficient to establish future risk of harm); *Dugas v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 3:16-cv-00014-GPC-BLM, 2016 WL 6523428, at *5 (S.D. Cal. Nov. 3, 2016) ("[W]here sensitive personal data, such as names, addresses, social security

numbers, and credit card numbers ***are improperly disclosed or disseminated into the public*** — thereby increasing the risk of future harm to plaintiff — injury in fact has been sufficiently alleged.") (emphasis added). This increased risk was recognized by Defendant based on its offer of credit-monitoring services to Class Members. *See* Def's Mtn. at 5. Moreover, the substantial risk of future harm is also bolstered by the fact that Plaintiffs have already experienced fraudulent misuse of their PHI (Section III.B.1, *supra*).

While Defendant cites *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190 (2021), that decision does not disrupt a finding of standing. First, numerous courts have found that *TransUnion* does not impact the standing analysis in data breach cases. *See Cotter v. Checkers Drive-In Rests., Inc.*, No. 8:19-CV-1386, 2021 WL 3773414, at *4 (M.D. Fla. Aug. 25, 2021) ("*TransUnion* does not eviscerate [plaintiffs'] standing because (1) *TransUnion* involved a suit for statutory damages, not compensatory damages as here, or in the alternative, (2) *TransUnion* was decided at a different phase of litigation."); *Mastel v. Miniclip SA*, No. 221CV00124, 2021 WL 2983198, at *6 (E.D. Cal. July 15, 2021) ("The court finds TransUnion to be distinguishable from this case, however, because TransUnion involved a fundamentally different type of alleged injury ... TransUnion involved a claim akin to defamation, not invasion of privacy."); *Baldwin v. Nat'l W. Life Ins. Co.*, No. 2:21-CV-04066, 2021 WL 4206736, at *3 (W.D. Mo. Sept. 15, 2021) ("[Defendant's] reliance on . . . *TransUnion* . . . [is] not on point."); *In re GE/CBPS Data Breach Litig.*, No. 20 Civ. 2903, 2021 WL 3406374, at *4 (S.D.N.Y. Aug. 4, 2021) (similar); *In re Blackbaud, Inc.*,

*Customer Data Breach Litig.*, No. 3:20-MN-02972, 2021 WL 2718439, at *6 n.15 (D.S.C. July 1, 2021) (similar).

Second, Plaintiffs satisfy the *TransUnion* standard by, among other things, sufficiently alleging "separate concrete harm[s]," 141 S. Ct. at 2211, in the form of identity theft and data misuse, invasion of privacy, loss of time and money, and emotional distress due to their PHI having been widely disclosed. *See Clemens v. ExecuPharm Inc*., 48 F.4th 146, 155-56 (3d Cir. 2022) ("[I]f the plaintiff's knowledge of the substantial risk of identity theft causes him to presently experience emotional distress or spend money on mitigation measures like credit monitoring services, the plaintiff has alleged a concrete injury."); *In re Mednax Servs., Inc., Customer Data Sec. Breach Litig.*, No. 21-MD-02994-RAR, 2022 WL 1468057, at *7-8 (S.D. Fla. May 10, 2022) (finding allegations of emotional distress and the time spent by plaintiffs "coupled with the substantial risk of future harm" was "sufficiently concrete to establish standing in a claim for damages").

**3. Plaintiffs' Loss of Privacy Establishes Injury-In-Fact**

The disclosure of highly sensitive PHI creates standing based on Plaintiffs' loss of privacy.

The Supreme Court, circuit courts, and district courts have held that the loss of privacy qualifies as an injury-in-fact. *See, e.g., Doe v. Chao*, 540 U.S. 614, 624-25 (2004) (standing where plaintiff was "greatly concerned and worried" by disclosure of his social security number and its potential consequences) (citation omitted); *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 638 (3d Cir. 2017)

("'unauthorized disclosures of information' have long been seen as injurious") (citation omitted); *Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *6 (N.D. Cal. July 28, 2021) (finding that "plaintiffs' allegations that Stripe compiled and disseminated plaintiffs' sensitive data precludes the Court from finding that plaintiffs have no reasonable expectation of privacy"); *Stasi v. Immediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 917 (S.D. Cal. 2020) (finding that patient's "interest in the confidentiality of medical information is not … necessarily tied to the risk of identity theft" where "medical information, including diagnosis codes and treating physicians, was posted on the most publicly accessible forum in the world for an unknown period of time"); *Perrill v. Equifax Info. Servs., LLC*, 205 F. Supp. 3d 869, 874 (W.D. Tex. 2016) ("[T[he Court finds an invasion of privacy within the context of the FCRA constitutes a concrete harm that meets the injury-in-fact requirements.); *cf. Doe v. Partridge*, No. A-08-CA-261 LY, 2008 WL 11411234, at *4 (W.D. Tex. May 28, 2008), *report and recommendation adopted*, No. A-08-CA-261-LY, 2008 WL 11411263 (W.D. Tex. June 20, 2008) ("Texas courts have long recognized a common law right to privacy.") (collecting cases). Recently, the Supreme Court in *TransUnion* reiterated that invasion of privacy and seclusion claims are concrete harms. 141 S. Ct. at 2205 (explaining that "disclosure of private information" and "intrusion upon seclusion" are intangible but "concrete" harms).

Here, Plaintiffs' PHI—including Social Security numbers, dates of birth, and medical information, diagnoses, treatments, and other sensitive information—was wrongfully made publicly available to unauthorized persons for over a year. Compl., ¶7.

Further, unauthorized individuals accessed this PHI thousands of times and even copied it thirty-five (35) times. *See* Exs. 2-3. Accordingly, Plaintiffs have experienced worry, embarrassment, and emotional distress. *Id.* ¶220. Plaintiffs have also experienced misuse of their data following the Breach, including a marked increase in the number of spam calls they have received to the point that Plaintiff M.S. purchased a call screening service. *See* Exs. 5-8; *see also* Sections III.B.1 and III.B.4, herein. As this Court, presided by Judge Eskridge, held in *Thomas v. Life Protect 24/7 Inc.*, 559 F. Supp. 3d (S.D. Tex. 2021), ***unwanted phone calls are "an invasion of privacy, and thus, can alone establish standing***." *Id.* at 563 (emphasis added).

While Defendant cites *C.C. v. Med-Data Inc.*, No. 21-2301-DDC-GEB, 2022 WL 970862 (D. Kan. Mar. 31, 2022) in an attempt to argue that Plaintiffs lack standing, the decision in *C.C.* was a result of the specific allegations in that plaintiff's complaint, which are plainly distinguishable from this case. *Id.* at *4 (explaining the court's holding was based on "the facts alleged in this case"). Of particular importance, ***unlike*** Plaintiffs here (*see* Section II), the plaintiff in *C.C.* had no allegations of data misuse or identity theft, spam calls, lost time and expenses, nor any other "concrete harm." *Id.* at *9. Further, the plaintiff in *C.C.* did not have the supportive discovery that Plaintiffs have developed, including evidence that the PHI was actively and repeatedly accessed and copied.

#### 4. Plaintiffs' Time and Expense from Identity Protection and Credit Monitoring Services Constitutes Injury-in-Fact

Courts have routinely recognized allegations of lost time and money spent by data breach victims addressing the fallout of a breach as sufficient to constitute injury-in-fact

for standing purposes. *See, e.g., Stasi v. Immediate Health Grp. Corp.*, 501 F. Supp. 3d 898, 918 (S.D. Cal. 2020) (medical data breach case where court held that "Plaintiffs allege plausible damages in the form of lost time"); *In re Marriott Int.'l, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447, 494 (D. Md. 2020) (accepting allegations of "loss of time and money spent mitigating harms" in rejecting motion to dismiss); *Dieffenbach v. Barnes & Noble, Inc.*, 887 F.3d 826, 828 (7th Cir. 2018) (allegations of loss of "the value of one's own time needed to set things straight is a loss from an opportunity-cost perspective," and "[t]hese injuries can justify money damages"); *In re Solara Med. Supplies, LLC Customer Data Sec. Breach Litig.*, No. 3:19-cv-2284-H-KSC, 2020 U.S. Dist. LEXIS 80736, at *12 (S.D. Cal. May 7, 2020) ("Increased time spent monitoring one's credit and other tasks associated with responding to a data breach have been found by others courts to be specific, concrete, and non-speculative.") (collecting cases).

Here, Plaintiffs expended time and incurred costs to mitigate imminent harms or to respond to already-incurred harms. For example, Plaintiffs have the recurrent task of monitoring their credit and identities, which has taken, and will take, hours of their lives. Compl., ¶¶18-22, 26-29. Further, Plaintiff M.S. even spent her own funds to address the ramifications of the breach, including the purchase of a subscription to "Robo Killer" for $16.11 per year to block the significant increase in spam calls following the Breach. Ex. 5, (M.S.'s Resp. to Interrog. No. 1); Ex. 6 (M.S. Dep. 48:2-49:14). Defendant offers virtually no argument against the expenses incurred by Plaintiff M.S. to purchase RoboKiller nor the time spent by both Plaintiffs as a result of the Healthcare Data Breach.

Additionally, M.S. has spent $161.96 to have a computer technician remove spyware from her computer that was discovered after the breach. *Id.* Defendant's isolated references to deposition testimony to challenge the reasonableness of this expense fails to undermine M.S.'s injuries. Plaintiff M.S. chose to have the computer swept as mitigation for the harms of the Breach and even showed the computer technician the Breach notification letter from MedData. Ex. 6 (M.S. Dep. 76:4-16). Indeed, counsel for Defendant acknowledged in M.S.'s deposition that M.S. attributed the removal of spyware from her laptop as part of "the list of suspicious things that have happened to you that make you think someone may have looked at the information on the public-facing website related to that MedData letter." Ex. 6 (M.S. Dep. at 50:1-7); *see also id.* at 46:3-18; *id.* at 53:5-10.

Further, contrary to Defendant's assertion, this is not a case where Plaintiffs seek to manufacture standing by incurring costs in anticipation of non-imminent harm. Instead, as described *supra* at Section III.B.2. Plaintiffs were and are at an imminent risk of future harm. As a result, their money and time spent monitoring their information, including credit reports and accounts, and the time they spent to mitigate the harms from the identity theft and data misuse that has ***already*** occurred (*see* Section III.B.1, *supra*) constitutes concrete and particularized injury-in-fact.

#### 5. Plaintiffs' Diminution in Value of their Personal Information Constitutes Injury in Fact

Plaintiffs allege that their PHI is a valuable commodity, that a market exists for their PHI (Compl., ¶¶48, 70-96), that as a result of the Healthcare Data Breach, their PHI was compromised in the Breach (*Id.* ¶¶15, 24-25), and that their PHI has lost value as a result

(*Id.* ¶93). Plaintiffs' allegations that the intrinsic value of their PHI has been diminished by the Healthcare Data Breach is adequate to allege standing at this stage of litigation.

These allegations of injury arising from the loss of value of confidential information are sufficient to confer Article III standing. For example, in *In re Facebook Privacy Litigation*, 572 Fed. Appx. 494 (9th Cir. 2014), the court found plaintiffs plausibly alleged they experienced harm where their confidential information was disclosed in a data breach, and the plaintiffs "los[t] the sales value of th[eir] [personal] information" as a result. *Id.* Similarly, in *In re Marriott International, Inc., Customer Data Sec. Breach Litig.*, 440 F. Supp. 3d 447 (D. Md. 2020), the court correctly reasoned: "Neither should the Court ignore what common sense compels it to acknowledge – the value that personal identifying information has in our increasingly digital economy." *Id.* at 462 (recognizing that "the growing trend across courts that have considered this issue is to recognize the lost property value of [personally-identifying] information") (collecting cases). Additionally, in *In re Anthem, Inc. Data Breach Litigation* ("*Anthem II*"), 2016 WL 3029783 (N.D. Cal. May 27, 2016), the court found plaintiffs plausibly alleged injury from the loss of value of their confidential information, explaining that, for standing purposes, a plaintiff must "allege that there was either an economic market for their [personal information] *or* that it would be harder to sell their own [personal information], not both." *Id.* at *14-15; *see also Svenson v. Google, Inc.*, 2015 WL 1503429, at *5 (N.D. Cal. Apr. 1, 2015) ("Svenson's allegations of diminution in value of her [confidential information] are sufficient").

While Defendant argues that Plaintiffs must demonstrate that they intended to sell their confidential information to establish injury (Def's Mtn. at 13), this argument lacks merit, as courts have recognized. For example, in *In re Marriott International, Inc., Customer Data Sec. Breach Litig.*, the court held that the value of PII and PHI "is not derived solely (or even realistically) by its worth in some imagined market place where the consumer actually seeks to sell it to the highest bidder" but rather the benefits individuals derive from their personal information. 440 F. Supp. 3d at 462; *Svenson*, 2015 WL 1503429, at *5 (holding that plaintiffs are not required to plead that they intended to sell their own confidential information); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2017 WL 3727318, at *14 (N.D. Cal. Aug. 30, 2017) ("Plaintiffs' allegations that their Personal Information is a valuable commodity, that a market exists for Plaintiffs' Personal Information, . . . and that Plaintiffs have lost the value of their Personal Information as a result, are sufficient to plausibly allege injury arising from the Data Breaches."). Accordingly, whether Plaintiffs allege that they intended to sell their PHI is not dispositive. Plaintiffs' diminished value and diminished use in their information is sufficient to confer standing under Article III.

**6. Plaintiffs' Emotional Distress Constitutes Injury-in-Fact**

Both Plaintiffs have experienced emotional distress as a result of the Healthcare Data Breach. *See* Ex. 5 (M.S.'s Resp. to Interrog. No. 1); Ex. 8 (Pl. D.H.'s Resp. to Def.'s Interrog. No. 1); *see also* Ex. 7 (D.H. Dep. 67:10-68:8). In particular, Plaintiff M.S. had the distressing and frightening experience of having an unknown individual seemingly

impersonate her medical transportation company shortly after she received her breach notification letter from MedData, advising that her PHI had been exposed. Compl., ¶17; Ex. 6 (M.S. Dep. 71:6-13). "Simply put, receiving such a communication [like an official notification] by its nature increases fear and apprehension[.]" *Salermo*, 516 F. Supp. 3d at 709 (Eskridge, J.) (finding injury due to potential anxiety caused by misleading debt collection letter). The distress caused to Plaintiff M.S. by the combined events was so serious that it prompted Plaintiff M.S. to have a computer technician scan her laptop, which cost Plaintiff M.S. $161.96. Ex. 5 (M.S.'s Resp. to Interrog. No. 1).

Defendant argues that allegations of emotional distress alone would be insufficient to confer standing. However, Plaintiffs have standing even under cases cited by Defendant. As Defendant recognizes, "allegations of emotional distress, coupled with the substantial risk of future harm, are sufficiently concrete to establish standing in a claim for damages." *In re Mednax Servs.*, 21-MD-02994-RAR, 2022 WL 1468057, at *7-8; *see* Def's Mtn. at 15. Here, the Court is on firm ground to find Plaintiffs' allegations of emotional distress combined with the substantial risk of future harm sufficiently concrete.

### C. Plaintiffs' Injuries Are Fairly Traceable to the Challenged Conduct

Plaintiffs have also demonstrated that their injury is fairly traceable to the breach. "A showing that an injury is 'fairly traceable' requires less than a showing of 'proximate cause.'" *Resnick*, 693 F.3d at 1324 (citations omitted).

In this case, Plaintiffs have alleged that Defendant made Plaintiffs' PHI publicly-available, this PHI was accessed and even copied many times over by unknown individuals

(Exs. 2-3), and Plaintiffs' PHI was subsequently misused, including to file a fraudulent tax return (Ex. 5) and to make bothersome spam calls (Exs. 5-6). These allegations fairly trace Plaintiffs' injuries to Defendant's failure to prevent the public posting, and subsequent unauthorized access, of Plaintiffs' PHI. The fact that Defendant sent out notice letters warning victims of the breach reflects that this Healthcare Data Breach was serious enough to have negative consequences, such as those alleged by Plaintiffs. *See, e.g.*, Compl., ¶¶14, 25.

Defendant relies on the holding in *Peters v. St. Joseph Servs. Corp.*, 74 F. Supp. 3d 847 (S.D. Tex. 2015) to argue that Plaintiffs' injury is not fairly traceable. In *Peters*, the Court found the plaintiff's injuries were not "proximately caused" and plaintiff "fail[ed] to account for a sufficient break in causation caused by opportunistic third parties." *Id.* at 857. However, the Supreme Court has made it abundantly clear that "[p]roximate causation is not a requirement of Article III standing." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6 (2014); *see also Perrill v. Equifax Info. Servs., LLC*, 205 F. Supp. 3d 869, 874 (W.D. Tex. 2016) (listing *Peters* among the cases the court found "unpersuasive"). Accordingly, Defendant's suggestion that direct causation is required to render an injury fairly traceable is unfounded.

Moreover, numerous courts, including Circuit Courts, have found traceability in data breach cases. *See Resnick,* 693 F.3d at 1324 ("[S]howing that a plaintiff's injury is indirectly caused by a defendant's actions satisfies the fairly traceable requirement."); *Remijas v. Neiman Marcus Grp., LLC*, 794 F.3d 688, 696 (7th Cir. 2015) (finding

traceability where "Neiman Marcus admitted that 350,000 cards might have been exposed and that it contacted members of the class to tell them they were at risk."). As, the Sixth Circuit held in *Galaria*, while finding traceability met in the context of a data breach:

> but for [the defendant's] allegedly lax security, the hackers would not have been able to steal Plaintiffs' data. ***These allegations meet the threshold for Article III traceability, which requires more than speculative but less than but-for causation***."

663 F. App'x at 390 (emphasis added).

Accordingly, "[w]hile Defendant is free to litigate at a later stage of the litigation whether the data breach caused Plaintiffs' fraudulent transactions, 'this debate has no bearing on standing to sue.'" *Finesse Express, LLC v. Total Quality Logistics, LLC*, No. 1:20CV235, 2021 WL 1192521, at *5 (S.D. Ohio Mar. 30, 2021) (quoting *In re SuperValu, Inc*., 870 F.3d 763, 773 (8th Cir. 2017).

### D. Plaintiffs' Injuries are Capable of Being Redressed by this Court

The last requirement Plaintiffs successfully establish is redressability. It must be "likely" the injury experienced by Plaintiffs "will be redressed by a favorable decision." *Lujan*, 504 U.S. at 561 (internal citation omitted).

This Court is capable of redressing Plaintiffs' injuries. Plaintiff M.S. has expended $16.11 on a subscription to Robo Killer to block the spam calls, and she has spent $161.96 to have a computer technician sweep her laptop and remove spyware following the breach notification. Both Plaintiffs have devoted numerous hours attempting to mitigate harms resulting from the breach. Both Plaintiffs allege diminution in the value of their PHI. Plaintiffs also allege claims for violations of consumer protection laws, which bring

statutory damages. Compl., ¶¶193-221. The Court is able to provide monetary relief for all of these claims. In addition, because Defendant still possesses Plaintiffs' PHI, this Court is able to provide injunctive relief by ordering Defendant to upgrade security procedures, training, and protocols so that this disaster does not happen again.

Accordingly, this Court is well-equipped to redress Plaintiffs' harms. Tellingly, Defendant cites no cases to indicate otherwise.

## IV. CONCLUSION

For the reasons set forth herein, MedData's Motion to Dismiss should be denied in its entirety.

Dated: October 21, 2022

Respectfully submitted,

*/s/ William B. Federman*
William B Federman (TX Bar No. 00794935)
A. Brooke Murphy (admitted *pro hac vice*)
**FEDERMAN & SHERWOOD**
212 W. Spring Valley Road,
Richardson, Texas 75081
and
10205 N. Pennsylvania Ave.
Oklahoma City, OK 73120
Phone: (405) 235-1560
Fax: (405) 239-2112
wbf@federmanlaw.com
abm@federmanlaw.com

Maureen M. Brady (admitted *pro hac vice*)
**MCSHANE & BRADY LLC**
1656 WASHINGTON ST STE 120
KANSAS CITY, MO 64108
816−888−8010
Email: mbrady@mcshanebradylaw.com

*ATTORNEYS FOR PLAINTIFFS*

**CERTIFICATE OF WORD COUNT**

I hereby certify that this document complies with Rule 18 of this Court's Procedures, being 4,973 words, exclusive of case caption, tables, signatures, and certicates.

*/s/ William B. Federman*
William B Federman

**CERTIFICATE OF SERVICE**

I hereby certify that on this day, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

Dated: October 21, 2022

*/s/ William B. Federman*
William B Federman