**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| M.S. and D.H., individually and on behalf of all others similarly situated, *Plaintiffs*, | C.A. No. 4:22-cv-187 |
| v. | Hon. Charles Eskridge |
| MED-DATA, INC., *Defendant*. | JURY DEMANDED |

**DEFENDANT MED-DATA, INC.'S REPLY TO PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Defendant MedData, Inc. ("Defendant") files this Reply to Plaintiffs' Response to Defendant's Motion to Dismiss Plaintiffs' claims under Federal Rule of Civil Procedure 12(h)(3) for lack of subject-matter jurisdiction.

## I.
## INTRODUCTION AND SUMMARY OF ARGUMENT IN REPLY

Lacking evidence that their PHI has been accessed, let alone misused, Plaintiffs contend that their PHI "*was viewed thousands of times and even 'cloned' thirty-five times by unknown and unauthorized individuals….*" Resp. [Doc. 58] at 2-3. Plaintiffs' contention is based on GitHub Data Logs ("Logs") that purport to indicate each access to files that the former MedData employee, Zulfiqar Faruqi ("Faruqi"), created on his GitHub repository. The Logs are inadmissible hearsay. Even assuming Plaintiffs could prove facts necessary for the Logs to become admissible, the Logs do not identify the person or entity who accessed Faruqi's files. Plaintiffs provide no evidence to support their speculation

that anyone other than Faruqi accessed the files. Moreover, Plaintiffs' speculation is rebutted by Faruqi's testimony that the Log entries were generated by his work, and his testimony that he observed no third parties had accessed his GitHub files.

MedData's Opening Brief explained that the "injuries" Plaintiffs allege do not meet the three elements of the test for standing. *See* Opening Br. [Doc. 55] at 7-15. Plaintiffs' Response does not identify any other alleged "injuries." Each of Plaintiffs' alleged "injuries" is based solely on speculation regarding the Logs that are both inadmissible and do not identify who accessed Faruqi's GitHub files. Moreover, Plaintiffs present no evidence to even plausibly suggest that their alleged injuries were "fairly traceable" to the data security incident.

Because Plaintiffs cannot demonstrate a "concrete, particularized and actual or imminent" injury, Plaintiffs lack Article III standing. This Court should grant Defendant's Motion to Dismiss. Indeed, one other federal court has already held the same in a matter arising out of the very same data security incident. *C.C. v. Med-Data Inc.*, No. 21-2301-DDC-GEB, 2022 U.S. Dist. LEXIS 60555 (D. Kan. 2022).

## II.
## ARGUMENT AND AUTHORITIES

### A. Plaintiffs Apply the Wrong Standard of Review.

Plaintiffs ignore that Defendant's Motion is brought pursuant to Rule 12(h)(3). Under Rule 12(h)(3), the court may consider (1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Spotts v. United States*, 613 F.3d 559,

566 (5th Cir. 2010). The trial court is "free to weigh the evidence and satisfy itself" that subject-matter jurisdiction exists. *MDPhysicians & Assocs., Inc. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)).

Plaintiffs' Response wrongly applies the Rule 12(b)(6) standard, which requires the court to accept all facts alleged in the complaint, construe them in a light most favorable to the plaintiff, and draw all reasonable inferences in favor of the plaintiff. (Resp. at 9 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).) Here, Defendants have propounded written discovery relevant to Plaintiffs' alleged injuries, as well as taken the depositions of both Plaintiffs. Plaintiffs have also taken the depositions of Tony Briggs, MedData's Chief Information Officer, and Faruqi, the former MedData employee who unknowingly uploaded files containing PHI. Where discovery exists, Rule 12(h)(3) is the appropriate standard. *See Lujan*, 504 U.S. at 561 ("[Standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at successive stages of litigation.")

**B. The GitHub Logs Are Inadmissible.**

Plaintiffs rely on Logs that GitHub provided to MedData. The Logs are inadmissible hearsay: out-of-court statements offered to prove matters asserted therein. Fed. R. Evid. 801. No hearsay exception applies. No GitHub custodian or other qualified person has certified that the Logs are "a record generated by an electronic process or system that produces an accurate result," nor has any custodian or other

qualified person made the certification available for inspection so MedData has a fair opportunity to challenge them. Fed. R. Evid. 902(11) & (13).

**C. Even if Admissible, the Logs Do Not Support Plaintiffs' Speculation.**

Plaintiffs provide no evidence that the Logs show "unknown persons" viewed and copied Plaintiffs' PHI. Plaintiffs submit an email from Kevin Bassett, a MedData employee, in which he speculated regarding the meaning of the Logs (*see* Resp., Ex. 2 [Doc. 58-2]). But Bassett has no personal knowledge regarding the accuracy or interpretation of the Logs. *See* Declaration of Kevin Bassett ("Bassett Decl."), ¶¶ 3-5 (Exhibit 1 attached hereto).

Further, Faruqi testified that he worked on his GitHub files, including the PHI files, regularly while developing "rules engine" software for MedData; and that he continued to work on the "rules engine" after he left MedData. Faruqi Dep., 159:2-161:21; 171:2-173:5; 183:4-189:1 (Exhibit 2 attached hereto). Contrary to Plaintiffs' speculation that their PHI was "'cloned' [copied] thirty-five times by unknown and unauthorized individuals," Faruqi testified that he made all 35 copies. *Id.* Moreover, Faruqi testified his GitHub dashboard would show a "spike" if anyone else accessed his files and he never saw a "spike." *Id.* 123:1-18; 124:3-9; 164:11-168:10; 181:12-182:5; 204:5-205:23.

The only way to prove that anyone other than Faruqi's accessed his files is to offer evidence outside the Logs themselves. For example, the Logs show someone accessed the files on December 14, 2020, including the two PHI files ("meraedi" and "gharkeedi"). *See* Bassett Decl., ¶¶ 7-11. Bassett sent emails the same day describing his findings from viewing the Logs. *Id*. Thus, admissible evidence proves Bassett is the person who accessed

Faruqi's files on December 14. Plaintiffs offer no comparable evidence to support their contention that "unknown persons" accessed the files. There is simply no evidence in the Logs or the record before this Court that "unknown persons" viewed or copied Faruqi's GitHub files.

**D. Plaintiffs' Alleged Injuries Do Not Meet the Causation Test for Standing.**

Plaintiffs' Response alleges the following injuries: notification that an unknown person *attempted* to file a fraudulent tax return (Plaintiff M.S.); unidentified "suspicious" financial account activity (Plaintiff D.H.), and an *increase* in spam calls (both Plaintiffs). Resp. at 4-5. Plaintiffs, however, present no evidence to plausibly suggest that these alleged injuries were "fairly traceable" to the data security incident. Plaintiffs' testimony exposes the extent to which Plaintiffs are grasping at straws. M.S. admitted that the fraudulent tax return notification could have itself been a spam email not actually from TurboTax and, although she testified that she called TurboTax to discuss the situation, she could not recall anything about that conversation. M.S. Dep., 50:8-53:3 (Exhibit 3 attached hereto). D.H. testified that she experienced some vague "suspicious activity with her financial accounts" which happened "a couple of times," occurring between one and five years before she received the letter from MedData notifying her of the data-security incident. D.H. Dep., 17:18-19:8 (Exhibit 4 attached hereto). And Plaintiffs' increased spam calls allegations are based on the assumption that *unknown persons* discovered Faruqi's PHI files on GitHub, and filtered through information on more than 130,000 patients to find Plaintiffs' *publicly available* telephone numbers, thereby resulting in *an increase* in the number of spam that Plaintiffs *were already receiving*.

**E. Plaintiffs Have Not Satisfied the "Injury-in-Fact" Requirement for Standing.**

To meet the "injury-in-fact" standing requirement, Plaintiffs must have already suffered a legally recognized injury or demonstrate there is an impending danger or substantial risk that they will suffer such an injury. *Salermo v. Watters*, 516 F. Supp. 3d 696, 705 (S.D. Tex. 2021) (C. Eskridge). Plaintiffs have done neither.

The case law Plaintiffs cite to support their "injury-in-fact" requirement fall into three general categories, none of which apply in this case: (1) cases decided at the pleading stage under Rule 12(b)(6), rather than the applicable 12(h)(3) standard; (2) cases in which there was admissible evidence of actual harm or credible risk of harm due to criminal data breaches; and/or (3) cases involving statutory, rather than compensatory damages. *See, e.g. Resnick v. Avmed, Inc.*, 693 F.3d 1317 (11th Cir. 2012) (standing addressed at pleadings stage where corporate laptops stolen and sold to an individual with a history of dealing in stolen property and evidence of opened bank and credit card accounts); *Galaria v. Nationwide Mut. Ins*. Co., 663 F. App'x 384, 388 (6th Cir. 2016) (standing addressed at pleadings stage where PII was accessed by hackers breaking into, and stealing information from, insurance company's computer network); *Hutton v. Nat'l Bd. Of Exam'rs in Optometry, Inc*., 892 F.3d 613 (4th Cir. 2018) (standing addressed at pleadings stage where stolen information used to open credit cards in plaintiffs' names); *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 996 F. Supp. 2d 942, 962 (S.D. Cal. 2014) (standing addressed at pleadings stage where personal information was hacked and then wrongfully disclosed); *Attias v. Carefirst, Inc*. 865 F.3d 620 (D.C. Cir. 2017) (standing addressed at pleadings stage where cyberattack and information stolen); *Krottner v.*

*Starbucks Corp.*, 628 F.3d 1139 (9th Cir. 2010) (standing addressed at pleadings stage where corporate laptop stolen.

Here, in contrast, the parties are well past the pleadings stage and yet, there is still nothing to support improper access, let alone misuse, of Plaintiffs' data or a credible threat of future harm. Defendant's computer networks were not targeted and criminally hacked – the data was simply inadvertently posted by a former employee with no malicious intent. Plaintiffs offer no admissible evidence that their personal information was actually accessed by any bad actor. *See, infra*, at p. 4. Indeed, it has now been more than four years since the information was first uploaded to GitHub, and over eighteen months since its removal and Plaintiffs are still not able to identify a single instance where their personal information was misused. Plaintiffs have availed themselves of credit monitoring services and those services have found no indication that Plaintiffs' personal information has been compromised. Additionally, MedData's cybersecurity outside experts' performed an extensive Dark Web search in February and March 2020, shortly after Faruqi's files were removed from GitHub. Opening Br. at 5 [Doc. 55]. No PHI of any of the 135,000 patients whose data had been inadvertently uploaded to GitHub was detected on the Dark Web. *Id.* It simply defies reason to suggest that 135,000 patients' PHI was viewed "thousands of times" and copied multiple times, yet none was found on the largest marketplace in the world for personal information capable of fraudulent use.

By any measure, Plaintiffs' alleged "injury-in-fact" is entirely speculative at best, and certainly not a risk that is "impending" or "substantial."

## III.
## CONCLUSION

Considering the *pleadings and the evidence*, pursuant to Rule 12(h)(3), it is clear that Plaintiffs lack Article III standing. This Court therefore lacks subject-matter jurisdiction and, as such, this matter must be dismissed with prejudice.

Respectfully submitted,

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**

By: */s/Ethan Carlyle*
Ethan D. Carlyle
State Bar No. 24031794
Southern District No. 30741
ethan.carlyle@wilsonelser.com
909 Fannin St., Suite 3300
Houston, Texas 77010
Tel: (713) 353-2000
Fax: (713) 785-7780

and

Ralph H Palumbo – *admitted pro hac vice*
rpalumbo@aretelaw.com
Washington State Bar No. 4751
Lynn M Engel – *admitted pro hac vice*
lengel@aretelaw.com
Washington State Bar No. 21934
Arete Law Group PLLC
1218 Third Ave Ste. 2100
Seattle, WA 98101
206-428-3150 – Telephone

**ATTORNEY-IN-CHARGE FOR DEFENDANT MED-DATA, INC.**

**OF COUNSEL:**

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**

Michael F. Webb
State Bar No. 24118218
S.D. Tex. No. 3586792
michael.webb@wilsonelser.com
909 Fannin St., Suite 3300
Houston, Texas 77010
Tel: (713) 353-2000
Fax: (713) 785-7780

**CERTIFICATE OF WORD COUNT**

I hereby certify that this document complies with Rule 18 of this Court's Procedures, being 1,792 words, exclusive of the case caption, table of contents, table of authorities, signature block, and certificates.

*/s/Ethan D. Carlyle*
Ethan D. Carlyle

**CERTIFICATE OF SERVICE**

I hereby certify that on November 7, 2022, a true and correct copy of the foregoing instrument was delivered to all parties and counsel of record in accordance with the Federal Rules of Civil Procedure.

*/s/Ethan D. Carlyle*
Ethan D. Carlyle