# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| M.S., D.H., C.C. and Nicole Tokarski, individually and on behalf of all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>MED-DATA, Inc.,<br><br>     Defendant. | Case No. 4:22-cv-00187<br><br>Hon. Charles Eskridge |

## PLAINTIFFS' UNOPPOSED MOTION FOR

## PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

## **TABLE OF CONTENTS**

I.     INTRODUCTION ............................................................................................. 1

II.    THE NATURE AND STAGE OF PROCEEDINGS ................................................ 2

    A.     Procedural history ......................................................................................... 2

    B.     Settlement Terms ........................................................................................... 4

        1.     The Settlement Class ............................................................................ 4

        2.     Monetary Relief .................................................................................... 4

        3.     Non-monetary relief ............................................................................. 6

        4.     Release ................................................................................................... 7

III.   ARGUMENT ................................................................................................... 7

    A.     Settlement Class members have standing. ...................................................... 7

    B.     The Settlement Class satisfies the Rule 23 requirements................................ 8

        1.     The Rule 23(a) requirements are satisfied. .......................................... 8

        2.     The Rule 23(b)(3) requirements are satisfied....................................... 9

    C.     The proposed settlement should be preliminarily approved. ...................... 10

        1.     Plaintiffs and their counsel have adequately represented the
            Class. ................................................................................................... 11

        2.     The stage of the proceedings and discovery completed
            support approval. ................................................................................ 11

        3.     The settlement relief is adequate considering the risk, cost,
            and delay of trial and appeal. ........................................................... 12

        4.     The Settlement Fund will be fairly and effectively
            distributed. ......................................................................................... 14

        5.     The participants' opinions support approval. ................................... 15

    D.     The Court should approve the proposed notice plan. ................................ 16

    E.     Appointment of the Settlement Administrator ........................................... 19

    F.     Appointment of Settlement Class Counsel................................................. 19

    G.     The Court should set a final fairness hearing. ........................................... 20

IV.    CONCLUSION ............................................................................................. 20

# TABLE OF AUTHORITIES

**Cases**

*Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, No. 3:16-cv-05486-JCS,
   2018 WL 8949777 (N.D. Cal. Oct. 15, 2018) ................................................. 15
*Almon v. Conduent Bus. Servs.,* 2022 WL 902992 (W.D. Tex. Mar. 25, 2022) ................. 8
*Al's Pals Pet Care v. Woodforest Nat'l Bank,* 2019 WL 387409
   (S.D. Tex. Jan. 30, 2019) .......................................................... 15
*Amchem Prods. v. Windsor*, 521 U.S. 591 (1997) ............................................ 16
Ayers v. Thompson, 358 F.3d 356 (5th Cir. 2004) ............................................ 12
*Bridges v. Ridge Natural Resources*, 2020 WL 7495252 (W.D. Tex. Jan. 3, 2020) ........ 17
*Castano v. Am. Tobacco Co.*, 84 F.3d 734 (5th Cir. 1996) ................................. 10
*Chatelain et al. v. C, L and W PLLC, d/b/a Affordacare Urgent Care Clinics*,
   No. 50742-A (42nd Dist. Texas) ................................................... 13
*Clemens v. ExecuPharm*, 48 F.4th 146 (3d Cir. 2022) ....................................... 7
*Duncan v. JPMorgan Chase Bank*, 2016 WL 4419472 (W.D. Tex. May 24, 2016) ........ 15
*Hashemi v. Bosley, Inc.*, 2022 WL 2155117 (C.D. Cal. Feb. 22, 2022) ..................... 12
*Ibe v. Jones*, 836 F.3d 516 (5th Cir. 2016) ................................................... 9
*In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299 (N.D. Cal. 2018) ............. 9, 10, 13
*In re Brinker Data Incident Litig.*, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021)... 8, 9, 10
*In re Chesapeake Energy Corp.*, 567 F. Supp. 3d 754 (S.D. Tex. 2021).................... 11, 13
*In re Educ. Testing Service*, 2006 WL 3332829 (E.D. La. Nov. 15, 2006) ..................... 15
*In re Facebook Privacy Litig.*, 572 F. App'x 494 (9th Cir. 2014) ............................ 8
*In re Horizon Health Servs. Inc. Data Breach Litig.*, 846 F.3d 625 (3d Cir. 2017) .......... 8
*In re Katrina Canal Breaches*, 628 F.3d 185 (5th Cir. 2010) ............................... 16
*In re Solara Med. Supplies Data Breach Litig.*, 2022 WL 1174102
   (S.D. Cal. Apr. 20, 2022) ........................................................ 13
*In re Zappos.com, Inc.*, 888 F.3d 1020 (9th Cir. 2018) ........................................ 7
*Kostka v. Dickey's Barbecue Restaurants*, 2022 WL 16821685
   (Oct. 14, 2022) ....................................................... 12, 13, 14, 16
*Mullen v. Treasure Chest Casino*, 186 F.3d 620 (5th Cir. 1999) ............................ 8
*Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) .................................. 11
*Slipchenko v. Brunel Energy*, 2015 WL 338358 (S.D. Tex. Jan. 23, 2015)................... 17
*Unger v. Amedisys Inc.,* 401 F.3d 316 (5th Cir. 2005)........................................ 9
*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)....................................... 8


**Rules**

Fed. R. Civ. P. 23(a)(3) ...................................................................... 9
Fed. R. Civ. P. 23(e) ..................................................................... 7, 10
Fed. R. Civ. P. 23(g)(1)(B)................................................................. 19

**Regulations**

45 CFR § 164.103..........................................................................................................18
45 CFR § 164.502..........................................................................................................18

## I.  INTRODUCTION

Plaintiffs M.S., D.H., C.C. and Nicole Tokarsi submit this Unopposed Motion for Preliminary Approval of Class Action Settlement. Defendant, Med-Data, Inc. a/k/a Med-Data, LLC ("Med-Data" or "Defendant") does not oppose certification of the Settlement Class solely for purposes of facilitating the settlement sought to be approved in this motion. Plaintiffs strongly believe the Settlement is fair, reasonable and adequate, and that the Court should grant preliminary approval and notice should be distributed to Class Members.

Several individuals filed class action lawsuits after Med-Data announced that patient data had been exposed on a publicly-accessible website, Github.com. Plaintiffs in these cases (collectively, the "Litigation") alleged that Med-Data and, in two cases, healthcare provider Shawnee Mission Medical Center, failed to maintain the confidentiality of their most sensitive data. After extensive arm's-length negotiations including two mediations with different mediators, the parties reached a settlement of the Litigation that is fair, adequate, and reasonable. The agreement creates a $7,000,000 Settlement Fund with tiered benefits addressing the harms to class members and ensures meaningful changes to Med-Data's cybersecurity practices.

Plaintiffs now ask the Court to: (1) certify the Settlement Class for settlement purposes and appoint Plaintiffs as class representatives and their counsel as class counsel; (2) appoint Postlethwaite & Netterville ("P&N") as Settlement Administrator; (3) preliminarily approve the settlement as fair, reasonable, and adequate, (4) approve the form

and manner of notice, and the procedures for objecting to and opting out of the proposed settlement; (5) direct notice to class members, and (6) set a final fairness hearing.

## II.    THE NATURE AND STAGE OF PROCEEDINGS

Med-Data is a revenue cycle management company that services hospitals, physicians, and healthcare systems nationwide. In this business, Med-Data takes possession of patients' PHI and PII. The lawsuit stems from a Med-Data employee posting the PHI and PII of approximately 147,408 patients to Github.com (the "Data Incident"), where it remained for over a year. Plaintiffs allege Med-Data's failure to properly secure their data put Plaintiffs at risk of identity theft and other crimes. ECF 1 ¶¶ 35-105; ECF 67 at 2.

### A.    Procedural history

Plaintiffs M.S. and D.H. filed this lawsuit after learning their PHI/PII had been exposed. Four additional class action lawsuits were filed in various jurisdictions: (1) *Tokarski v. Med-Data, Inc.*, No. 2:21-cv-00631-TL (W.D. Wash.); (2) *C.C. v. Shawnee Mission Medical Center*, Case No. 21CV01724, (Johnson County, Kansas); (3) *C.C. v. Med-Data, Inc.*, Case No. 21CV01716, (Johnson County, Kansas); (4) *D.H. v. Shawnee Mission Medical Center*, Case No. 2116-CV09159, (Jackson County, Missouri).

Plaintiffs' counsel have cooperatively litigated the claims in the Litigation. Plaintiffs interviewed and obtained a declaration from Jelle Ursem, the security researcher who discovered the exposed data on GitHub. Plaintiffs served multiple sets of written discovery requests on Med-Data. Med-Data produced over 26,000 pages of documents. Plaintiffs also

obtained documents from Med-Data's cybersecurity consultant, Crowe LLP. Plaintiffs' counsel took Rule 30(b)(6) depositions of Med-Data and Shawnee Mission. Med-Data deposed Plaintiffs, who also responded to multiple sets of written discovery requests and produced documents. **Exhibit 1,** Declaration of William B. Federman ("Federman Decl.") ¶¶ 7–8.

Plaintiffs opposed Med-Data's motions to dismiss in this case and the *Tokarski* and *C.C.* cases. Plaintiffs here and in *Tokarski* moved for class certification, and Med-Data opposed. Plaintiffs' motions were supported by a report from Gary Olsen, an expert in valuing intangible assets in healthcare. Med-Data filed its own expert report and motions to exclude Olsen's testimony.

The parties mediated in September 2022 with the assistance of mediator Louis Peterson, without success. On March 28, 2023, the parties attended a second mediation with mediator Robert A. Meyer. During this second mediation, the parties agreed to key terms and, thereafter, continued negotiating the final terms of the settlement. The Settlement Agreement ("SA") is attached as **Exhibit A** to the Federman Declaration.

The parties agreed that approval for the Settlement would be sought through the present case. To that end, Plaintiffs filed a First Amended Complaint on August 22, 2023. ECF 81.

**B.    Settlement Terms**

1.    <u>The Settlement Class</u>

The proposed Settlement would create a nationwide settlement class which includes all residents of the United States whose personal information was posted on GitHub.com by a Med-Data employee, as announced by Med-Data in March 2021. SA § III. It is intended that the Settlement Class shall include approximately 147,908 individuals.

2.    <u>Monetary Relief</u>

Med-Data will establish a $7 million non-reversionary Settlement Fund to pay settlement awards, notice and administration costs, and any court-approved service awards and attorneys' fees and costs. SA § II.29, V.1. If the Court awards less than Plaintiffs' request in service awards or attorneys' fees and costs, the difference will remain in the Settlement Fund, none of which will revert to Med-Data. SA § XI.3.

a.    *Settlement Awards*

The Settlement Agreement allows Settlement Class Members to submit claims for one of two payment options. SA §§ IV.6, Ex. 1. Settlement Class Members may submit a "Tier 1 Claim" for up to five hours of lost time reimbursed at $25 per hour and compensation for documented Out-of-Pocket Losses, up to a total of $5,000. SA §§ IV.1.a–d. In the alternative, Settlement Class Members may submit a "Tier 2 Claim" for an alternative cash payment of up to $500. SA §§ IV.2.

All Settlement Class Members will also be eligible for "Tier 3 Automatic Benefits" of 36 months of Medical Shield Premium—a health data/fraud monitoring service with

$1,000,000 in identity theft insurance coverage—even if they do not file a claim. The Postcard Notice will contain a unique activation code for Settlement Class Members. SA § IV.3.

The Settlement Fund will be used to pay settlement obligations in the following order: (1) Tier 3 Benefits; (2) reimbursement for valid Tier 1 claims; (3) notice and administration costs; (4) court-approved attorneys' fees and costs; (5) court-approved service awards; and (6) Tier 2 claims for alternative cash payments. SA § V.5. Any residual funds will be used to extend the term of Medical Shield Premium for all Settlement Class Members. Any nominal funds remaining will be distributed *cy pres* to the National Cybersecurity Alliance, subject to Court approval. SA § IV.5.

### b.   Service Awards and Attorneys' Fees and Litigation Expenses

Plaintiffs will move separately for approval of service awards of $5,000 each. Plaintiffs' counsel will move for approval of an attorneys' fee award equal to one-third of the settlement fund and reimbursement of litigation costs not to exceed $200,000. Med-Data is free to contest the motion.

The settlement is not contingent on the amount of service awards or attorneys' fees or expenses awarded. SA §§ XI.1–3. If the Court awards less than Plaintiffs' request for service awards or attorneys' fees and expenses, the difference will remain in the Settlement Fund, and will not revert to Med-Data. SA § XI.3.

*c.    Administrative Expenses*

After a competitive bidding process, Plaintiffs propose to retain P&N to serve as Settlement Administrator. P&N will be responsible for disseminating notice, establishing the Settlement Website and toll-free number, responding to Class member inquiries, processing claim forms and opt-out requests, and administering the Settlement Fund. SA §§ VII–VIII. P&N estimates its costs will not exceed $269,700 (based upon a 10% claims rate). Declaration of Ryan Aldridge of P&N ("Aldridge Decl.") ¶ 14.

3.    <u>Non-monetary relief</u>

Med-Data has agreed to implement several changes to its business practices for at least two years. These changes include:

- annual cybersecurity testing by a qualified cybersecurity firm and Board presentations by an internal security auditor;

- regular updates to internal security policies and procedures;

- robust monitoring and auditing for data security issues;

- encryption of PII/PHI and data access controls;

- annual systems penetration testing and training;

- a monitored internal whistleblowing mechanism; and

- maintenance of a legally-compliant data deletion policy.

Med-Data will also work with GitHub to ensure that no PHI/PII of class members remains accessible on that platform. SA § IV.4.

4.    <u>Release</u>

Settlement Class members will release claims against Med-Data or its Business Associates, including Shawnee Mission Medical Center, and their affiliates, divisions, predecessors, successors, assigns, parents or subsidiaries, associates, employers, employees, agents, insurers, directors, managers, managing directors, officers, partners, principals, members, attorneys, shareholders, arising out of the Data Incident, that were alleged or could have been brought in the Litigation. SA § X.

## III.    ARGUMENT

A class action "may be settled … only with the court's approval." Fed. R. Civ. P. 23(e). Because the parties negotiated this settlement before a ruling on class certification, the Court must decide whether certification for settlement purposes is appropriate. The Court must then determine whether the settlement is likely to be approved as fair, reasonable, and adequate.

### A.    Settlement Class members have standing.

As discussed in their opposition to Med-Data's motion to dismiss, ECF 58, Plaintiffs and Settlement Class members have standing. The Fifth Circuit has not ruled on whether increased risk of harm from a data breach establishes standing, but other circuits find it does. *See In re Zappos.com, Inc.*, 888 F.3d 1020, 1027-29 (9th Cir. 2018). Plaintiffs also allege separate concrete harms, including identity theft and data misuse, invasion of privacy, loss of time and money, and emotional distress. *See Clemens v. ExecuPharm*, 48 F.4th 146, 155-56 (3d Cir. 2022); *In re Horizon Health Servs. Inc. Data Breach Litig.*, 846

F.3d 625, 638 (3d Cir. 2017). And Plaintiffs allege the loss of value of confidential information, another cognizable injury. *In re Facebook Privacy Litig.*, 572 F. App'x 494 (9th Cir. 2014).

**B.    The Settlement Class satisfies the Rule 23 requirements.**

1.    The Rule 23(a) requirements are satisfied.

Numerosity is satisfied because the Settlement Class includes approximately 147,408 members, making joinder impracticable. *Mullen v. Treasure Chest Casino*, 186 F.3d 620, 624 (5th Cir. 1999). Settlement Class members are ascertainable because they can be readily identified "from the records maintained in [Med-Data's] ordinary course of business." *Almon v. Conduent Bus. Servs.,* 2022 WL 902992, at *24 (W.D. Tex. Mar. 25, 2022).

Commonality is satisfied because there are significant questions of law and fact common to all Settlement Class members that will "generate common answers" that are "apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). These questions include whether Med-Data had a duty to protect class members' PHI/PII, whether Med-Data's security measures were adequate, and whether Med-Data timely notified class members about the exposure. *See In re Brinker Data Incident Litig.*, 2021 WL 1405508, at *8 (M.D. Fla. Apr. 14, 2021) (finding commonality satisfied by questions of "whether Brinker had a duty to protect customer data, whether Brinker knew or should have known its data systems were susceptible, and whether Brinker failed to implement adequate data security measures"), *vacated in part on*

*other grounds*, 73 F. 4th 883 (11th Cir. 2023); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 308 (N.D. Cal. 2018) ("The extensiveness and adequacy of Anthem's security measures lie at the heart of every claim. … and whether Anthem amply responded to the data breach also apply uniformly across the entire Class.").

<u>Typicality</u> is satisfied because "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Ibe v. Jones*, 836 F.3d 516, 528-29 (5th Cir. 2016). Plaintiffs' and all Settlement Class members' injuries arise from the same data exposure and their claims are based on the same legal theories. *See Brinker*, 2021 WL 1405508, at *8; *Anthem,* 327 F.R.D. at 309.

<u>Adequacy</u> is satisfied because the "class representatives, their counsel, and the relationship between the two are adequate to protect the interests of absent Class Members." *Unger v. Amedisys Inc.,* 401 F.3d 316, 321 (5th Cir. 2005). Plaintiffs have no conflicting interests with other Settlement Class members and have demonstrated their commitment to the Class's interests. Plaintiffs also retained counsel with substantial experience litigating and resolving similar class action cases. Federman Decl. ¶ 10, Ex. B.

2.    <u>The Rule 23(b)(3) requirements are satisfied.</u>

The common issues in this case <u>predominate</u> over any individual issues because Settlement Class members' claims arise from a single event: the exposure of their PHI and PII on GitHub. Courts routinely recognize that claims arising from unauthorized disclosures of PHI/PII turn on common questions that are proven with predominantly common evidence. *See*, *e.g.*, *Brinker*, 2021 WL 1405508, at *8, 11 (finding that

predominating common questions included defendant's duty to protect customer data, and whether defendant failed to implement adequate data security measures"); *Anthem*, 327 F.R.D. at 312 ("[T]he focus would remain on the extent and sufficiency of the specific security measures that Anthem employed. This is the precise type of predominant question that makes class-wide adjudication worthwhile.")

This class wide settlement is superior to thousands of individual lawsuits. Any individual recovery would be dwarfed by the costs of litigation. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 748 (5th Cir. 1996); *Brinker*, 2021 WL 1405508, at *13.

## C.     The proposed settlement should be preliminarily approved.

In determining whether to grant preliminary approval of a class settlement, courts consider:

> whether (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided by the settlement is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3) made in connection with the proposed settlement; and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). In addition, the Fifth Circuit has provided six factors for courts to consider in evaluating class settlements:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success

on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983). Courts consider these overlapping factors together. *In re Chesapeake Energy Corp.*, 567 F. Supp. 3d 754, 767-68 (S.D. Tex. 2021).

      1.   <u>Plaintiffs and their counsel have adequately represented the Class.</u>

Plaintiffs and their counsel have demonstrated their commitment to the Settlement Class by zealously pursuing Class members' interests through discovery, motion practice, and settlement negotiations. *See* Federman Decl. ¶¶ 4, 7–10. Plaintiffs have no conflicts of interest with other Class members and their counsel are well qualified to evaluate the merits of the settlement.

Proposed Class Counsel have extensive experience prosecuting and defending class actions, including those involving the breach of consumer data. William B. Federman of Federman & Sherwood, Jean S. Martin of Morgan & Morgan Complex Litigation Group, Beth E. Terrell and Ryan Tack-Hooper of Terrell Marshall Law Group, Maureen Brady of McShane Brady, and John Heenan of Heenan & Cook have been litigating class actions for many years and have held court-appointed leadership roles such cases across the country. *See* Federman Dec. ¶ 9-11, Ex. A (firm resumes).

      2.   <u>The stage of the proceedings and discovery completed support approval.</u>

This factor requires the Court to consider whether "the parties and the district court possess ample information with which to evaluate the merits of the competing

positions." *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004). The parties have a solid understanding of the strengths and weaknesses of their positions following written discovery, document production, and depositions. The parties also worked closely with experts to assess the potential damages. ECF 67-8, 69-11; Federman Decl. ¶ 7.

3.    The settlement relief is adequate considering the risk, cost, and delay of trial and appeal.

"When the prospect of ongoing litigation threatens to impose high costs of time and money on the parties, the reasonableness of approving a mutually-agreeable settlement is strengthened." *Heartland*, 851 F. Supp. 2d at 1064 (citation omitted); *see also Ayers*, 358 F.3d at 369 ("[S]ettling ... avoids the risks and burdens of potentially protracted litigation."). The parties devoted significant time and resources to litigating the Litigation for two years. Yet substantial work remains. Class certification briefing was ongoing, and fact and expert discovery are incomplete. Med-Data also moved to exclude Plaintiffs' damages expert. ECF 73. If Plaintiffs prevailed on class certification, Plaintiffs would have to prevail on dispositive motions, at trial, and the inevitable appeal.

Continued litigation is thus risky and costly, and a loss at any stage could leave class members with no recovery. *See Hashemi v. Bosley, Inc.*, 2022 WL 2155117, at *7 (C.D. Cal. Feb. 22, 2022) (recognizing the risks of proving causation and injury in data breach cases, "compounded by the fact that data breach class actions are a relatively new" and "damages methodologies in data breach cases are largely untested and have yet to be presented to a jury"); *Kostka v. Dickey's Barbecue Restaurants*, 2022 WL 16821685, at *11 (Oct. 14, 2022) ("[I]n the Fifth Circuit, there is little case law on the subject of data

breaches. Moreover, the out-of-circuit authority is not universally favorable to the proposed claims."), *adopted by* 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022).

This Settlement provides class members with a $7 million recovery, access to fraud monitoring services, *and* concrete changes to Med-Data's cybersecurity practices. The $7 million Settlement Fund represents approximately 59% of the $11.9 million recovery calculated by Plaintiffs' expert that Settlement Class members would be entitled to if they prevailed. *See* ECF 67-8 at 38 (Olsen Expert Report); *see also Chesapeake*, 567 F. Supp. 3d at 780-81 ("The question is not whether the parties have reached 'exactly the remedy they would have asked the Court to enter absent the settlement,' but instead 'whether the settlement's terms fall within a reasonable range of recovery.'" (citation omitted)).

The Settlement is within the range of reasonableness given the risks and costs of litigation. *See Anthem*, 327 F.R.D. at 319 (approving settlement equaling 14.5% of class members' projected recovery plus data security changes); *Kostka*, 2022 WL 16821685, at *1, 6, 12 (granting preliminary approval of $2,350,000 settlement of data breach claims of 725,000-member class); *In re Solara Med. Supplies Data Breach Litig.*, 2022 WL 1174102, at *7 (S.D. Cal. Apr. 20, 2022) (granting preliminary approval of $5,060,000 settlement for approximately 100,000 class members plus remedial measures); *Chatelain et al. v. C, L and W PLLC, d/b/a Affordacare Urgent Care Clinics*, No. 50742-A (42nd Dist. Texas) (data breach settlement providing 12-months of credit monitoring services and no expense reimbursements).

4.    <u>The Settlement Fund will be fairly and effectively distributed.</u>

Settlement Class members who submit valid claim forms are eligible to receive a share of the Settlement Fund. The Settlement pays for Tier 3 benefits and Tier 1 claims before deducting notice and administration costs, and any court-approved attorneys' fees, litigation expenses, and service awards. This allocation plan is fair and reasonable because it prioritizes fraud prevention and reimbursing claimants for lost time and out-of-pocket losses, ensuring that those most injured by the Data Incident are compensated and that all Settlement Class Members can protect themselves from future fraud. After administration costs, attorneys' fees, litigation expenses, and service awards are deducted, Tier 2 claimants will receive an alternative cash payment, recognizing Plaintiffs' allegation that the exposed information has independent value. This allocation essentially tracks the proportion of any judgment Class members would recover if they prevailed on summary judgment or at trial.

Submitting a claim will require minimal effort. The form is intentionally simple. SA, Ex. 1. The claim, including any supporting documentation, may be submitted online or mailed to the Settlement Administrator, and it will be deemed complete if it includes information sufficient to permit the Settlement Administrator to distribute a settlement payment to the Class Member and there is no reason to doubt its authenticity. If a claim is deficient or incomplete, P&N will promptly notify the class member, who will have 21 calendar days to cure any deficiencies. SA §§ IV.1–2, .6.

A claims process is appropriate and necessary in this case to ensure the Settlement Fund is properly and efficiently distributed. *See Kostka*, 2022 WL 16821685, at *12

(approving claim process where "potential class members need only submit a claim form in order to have their claim considered, and that all claims will be considered by an experienced and recognized national claims administrator"); *In re Educ. Testing Service*, 2006 WL 3332829, at *2 (E.D. La. Nov. 15, 2006) (claims process decreases risk of fraud and reduces time and money spent on sending checks to incorrect addresses). The settlement website and toll-free number available to Class members will encourage the filing of claims, as will the simplicity of the claim form and minimal effort required to submit a claim. *See Abante Rooter & Plumbing, Inc. v. Pivotal Payments Inc.*, No. 3:16-cv-05486-JCS, 2018 WL 8949777, at *7 (N.D. Cal. Oct. 15, 2018).

Plaintiffs in the Litigation will request Court approval of $5,000 service awards. Service awards recognize class representatives' efforts on behalf of the class and are routinely approved in this amount. *See*, *e.g.*, *Duncan v. JPMorgan Chase Bank*, 2016 WL 4419472, at *16 (W.D. Tex. May 24, 2016) ("District courts in the Fifth Circuit routinely award $5,000-$10,000 per named plaintiff."). Here, Plaintiffs were deposed and answered discovery. Plaintiffs' counsel will seek approval of an award of attorneys' fees of one-third of the Settlement Fund, "an oft-awarded percentage in common fund class action settlements in this Circuit." *Al's Pals Pet Care v. Woodforest Nat'l Bank,* 2019 WL 387409, at *4 (S.D. Tex. Jan. 30, 2019).

     5.    <u>The participants' opinions support approval.</u>

Plaintiffs and their counsel strongly support the proposed settlement. *See* Federman Decl. ¶ 11. As the Fifth Circuit has explained, "the trial court is entitled to rely upon the

judgment of experienced counsel for the parties." *Jones*, 865 F.3d at 300 (citation omitted). "The quality and experience of the lawyering is thus 'something of a proxy for both 'trustworthiness' and 'reasonableness'—that is, if experienced counsel reached this settlement, the court may trust that the terms are reasonable in ways that it might not had the settlement been reached by lawyers with less experience in class action litigation.'" *Id.* (citation omitted); *see also Kostka*, 2022 WL 16821685, at *143 (placing more weight on opinion of counsel experienced in data breach litigation).

       **D.**      **The Court should approve the proposed notice plan.**

Rule 23(e)(1) states that "[t]he court must direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement, voluntary dismissal, or compromise. To comply with due process, notice must be "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Amchem Prods. v. Windsor*, 521 U.S. 591, 617 (1997). The notice must state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B); *In re Katrina Canal Breaches*, 628 F.3d 185, 197 (5th Cir. 2010).

The proposed Notice Program complies with Rule 23 and due process. Similar notice plans are commonly used in class actions like this one, and constitute the best notice practicable under the circumstances. *See Bridges v. Ridge Natural Resources,* 2020 WL 7495252, at *5 (W.D. Tex. Jan. 3, 2020); *Slipchenko v. Brunel Energy*, 2015 WL 338358, at *5-6 (S.D. Tex. Jan. 23, 2015).

P&N will send a Postcard Notice to each Settlement Class Member, using the most recent address in Med-Data's records or identified through address correction services. SA § VIII.2. P&N will also establish a Settlement Website with detailed information about the Settlement, including the Notices, the Complaint, the Settlement Agreement, the Claim Form, an opt-out form, and the Preliminary Approval Order. SA §§ II.15, VIII.6–7. Class Counsel's motion for an award of attorneys' fees, costs, and service awards will also be posted on the Settlement Website. And P&N will, upon Class Counsel's request, send reminder postcard notices 30 calendar days before the claims deadline. SA §§ III.1, VIII.2.

The Long Form Notice, attached as Exhibit 2A to the Settlement Agreement, and the Postcard Notice, attached as Exhibit 2B, are drafted in plain English so they will be easy to understand and include all necessary information for Class Members to ascertain and act upon their rights. The Notices direct Settlement Class Members to the Settlement Website for further information and provides Class Counsel's contact information.

Med-Data's business records contain contact information for members of the proposed Settlement Class. However, because Med-Data is a business associate covered by the Health Insurance Portability and Accountability Act ("HIPAA"), Med-Data cannot disclose the identity or contact information for Settlement Class members to the Settlement

Administrator unless "required by law," which would include an order of the Court. 45 CFR § 164.502; 45 CFR § 164.103. As a result, parties request that the Court issue an order compelling Med-Data to produce the names and contact information of Settlement Class members to P&N for the limited purpose of providing notice of the Settlement and verifying claims.

As stated above, the proposed Settlement Class comprises all of the approximately 147,908 individuals who Med-Data concluded had their PI/PHI potentially compromised in the Data Incident. Med-Data was unable to provide notice of the Data Incident to approximately 6,500 individuals for whom Med-Data did not have current or complete contact information. These 6,500 individuals are expressly included in the proposed Settlement Class. SA § III.1. As part of the notice administration process, Med-Data will provide the Settlement Administrator all known personally identifiable data sufficient to identify these 6,500 individuals, such as date of birth and social security number, and the identity of the Med-Data Business Associate that provided health care services to the Settlement Class Member. The Settlement Administrator will use this information to determine valid contact information for these 6,500 individuals, similar to its standard procedure for validating class member contact information. Aldridge Decl. ¶¶ 6.

P&N has opined that the direct notice plan proposed is sufficient to satisfy the requirements of due process, including with respect to the 6,500 individuals, such that publication or geo-targeted notice is not necessary. Aldridge Decl. ¶¶ 15-16. If the Court does not agree with P&N's determination, P&N will provide such notice in the form and manner ordered by the Court. SA § III.1.

### E.    Appointment of the Settlement Administrator

In connection with implementation of the Notice Plan and administration of the settlement benefits, the Parties request the Court appoint P&N to serve as the Settlement Administrator. P&N is a well-respected third party administrator with a trusted and proven track record of supporting class action administrations. Aldridge Decl., Ex. A.

### F.    Appointment of Settlement Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel [who must] fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). In making this determination, courts generally consider the following attributes: the proposed class counsel's (1) work in identifying or investigating potential claims, (2) experience in handling class actions or other complex litigation, and the types of claims asserted in the case, (3) knowledge of the applicable law, and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A)(i–iv).

Here, proposed Class Counsel have extensive experience prosecuting consumer class actions and other complex cases, and specifically data breach cases. *See* Federman Dec. ¶ 9-11, Ex. A (firm resumes). Accordingly, the Court should appoint William B. Federman of Federman & Sherwood, Jean S. Martin of Morgan & Morgan Complex Litigation Group, Beth E. Terrell and Ryan Tack-Hooper of Terrell Marshall Law Group, Maureen Brady of McShane Brady, and John Heenan of Heenan & Cook as Class Counsel.

G.      The Court should set a final fairness hearing.

The next steps in the settlement approval process are to schedule a final fairness hearing, notify Settlement Class members of the settlement and hearing, and provide Settlement Class Members with the opportunity to submit Claim Forms and object, opt out, or comment on the Settlement. The parties propose the following schedule:

| EVENT | DATE |
|---|---|
| Deadline for Med-Data to provide the "Mailing List" to the Settlement Administrator (SA § VI.4) | 10 business days after the preliminary approval order |
| Notice to be disseminated (Notice Deadline) (SA § II.15) | 30 calendar days after the preliminary approval order |
| Deadline for Settlement Class Members to object or request exclusion (SA §§ II.17–18) | 50 calendar days after Notice Deadline |
| Class Counsel to file motion for attorneys' fees, costs, and service awards (SA § IX.1) | 90 calendar days after the preliminary approval order |
| Plaintiffs to file motion for final approval (SA § IX.1) | 120 calendar days after the Notice Deadline |
| Deadline for Settlement Class Members to Submit Claims (SA § II.5) | 75 calendar days after Notice Deadline |
| Deadline to file responses to any objections and replies in support of final approval and/or Class Counsel's motion for attorneys' fees, costs, and service awards (SA § VIII.1) | No later than 14 calendar days before the Final Fairness Hearing |
| Final Fairness Hearing | Not less than 210 days after entry of preliminary approval order |

IV.   CONCLUSION

Plaintiffs respectfully request the Court grant their motion, certify the Settlement Class for settlement purposes only, direct notice to the Class, compel Med-Data to provide

contact information for Settlement Class Members to the Settlement Administrator for purposes of notice and claims administration, and enter a schedule for final approval.

RESPECTFULLY SUBMITTED AND DATED this 16th day of November, 2023.

FEDERMAN & SHERWOOD

By: /s/ *William B. Federman*

William B. Federman, TX Bar No. 00794935
Email: wbf@federmanlaw.com
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
Telephone: (405) 235-1560

Maureen Brady, *Admitted Pro Hac Vice*
Email: mbrady@mcshanebradylaw.com
MCSHANE & BRADY LLC
1656 Washington St., Ste. 120
Kansas City, Missouri 64108
Telephone: (816) 888-8010

Beth E. Terrell
Email: bterrell@terrellmarshall.com
Ryan Tack-Hooper
Email: rtack-hooper@terrellmarshall.com
TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603

Jean S. Martin
Email: jeanmartin@forthepeople.com
MORGAN & MORGAN COMPLEX LITIGATION GROUP (FL)
201 North Franklin Street, 7th Floor
Tampa, Florida 33602

Telephone: (813) 559-4908

John Heenan
Email: john@lawmontana.com
HEENAN & COOK
1631 Zimmerman Trail, Suite 1
Billings, Montana 59102
Telephone: (406) 839-9081

*Attorneys for Plaintiffs*

## **CERTIFICATION OF WORD COUNT**

I hereby certify that this document complies with Rule 18 of this Court's Procedures, being 4,991 words (under the Court's limit of 5,000 words), exclusive of case caption, tables, signatures, and certificates.

*/s/ William B. Federman*
William B. Federman

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 16, 2023, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

*/s/ William B. Federman*
William B. Federman