**IN THE UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| M.S., D.H., C.C. and Nicole Tokarski, individually and on behalf of all others similarly situated, | Case No. 4:22-cv-00187 |
| Plaintiffs, | Hon. Charles Eskridge |
| v. | |
| MED-DATA, Inc., | |
| Defendant. | |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT AND MEMORANDUM OF LAW IN SUPPORT**

## **TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................................ 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ....................................... 1

III. THE TERMS OF THE SETTLEMENT ......................................................... 2

    A. The Settlement Class………....................................................................... 2

    B. Settlement Benefits…………..................................................................... 2

        1.  Tier One Claims…………….................................................... 3

        2.  Tier Two Claims……………................................................... 3

        3.  Automatic Health Data/Fraud Monitoring Services. ....................... 3

        4.  Business Practices Changes/Injunctive Relief. .................................. 3

    C. Notice Effectively Reached Settlement Class Members ............................ 4

    D. The Reaction of the Settlement Class Has Been Overwhelmingly Positive ........... 6

IV. THE SETTLEMENT SHOULD BE FINALLY APPROVED ..................................... 7

    A. The Settlement is Fair, Reasonable, and Adequate ................................... 8

        1.  Class Representatives and Class Counsel Have Adequately Represented the Class……………………………………………………………10

        2.  The Settlement was the Result of Arms-length Negotiations Without Fraud or Collusion……………………......................................................... 10

        3.  The Settlement is Favorable Given the Duration, Complexity and Expense of The Litigation and The Relief Sought……………… ..................................... 11

        4.  The Views of Class Counsel, Class Representatives, and the Settlement Class Support Final Approval……………………… ....................................... 13

5.  The Effectiveness of the Method of Distributing Relief to the Class Supports Approval of the Settlement……………………….................................. 14

6.  The Settlement Treats Settlement Class Members Equitably Relative to Each Other…………………………………………………………………15

B.  Certification of the Settlement Class Remains Appropriate................................ 16

1.  The Requirements of Rule 23(a) Remain Satisfied ..................................... 16

2.  The Requirements of Rule 23(b)(3) Remain Satisfied................................. 17

C.  The Court Should Confirm Its Earlier Appointment of Class Counsel and Settlement Class Representatives……… ................................................................ 18

V. CONCLUSION…………………………………………………………………18

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Amchem Prods. v. Windsor*,

    521 U.S. 591 (1997) ...................................................................................... 17

*Briseno v. ConAgra Foods, Inc.*,

    844 F.3d 1121 (9th Cir. 2017) ........................................................................ 5

*Cotton v. Hinton*,

    559 F.2d 1326 (5th Cir. 1977) ........................................................................ 8

*DeHoyos v. Allstate Corp.*,

    240 F.R.D. 269 (W.D. Tex. 2007) ................................................................ 13

*Eisen v. Carlisle & Jacquelin*,

    417 U.S. 156 (1974) ........................................................................................ 5

*Erica P. John Fund, Inc. v. Halliburton Co.*,

    2018 WL 1942227 (N.D. Tex. Apr. 25, 2018) .............................................. 14

*Hashemi v. Bosley, Inc.*,

    2022 WL 2155117 (C.D. Cal. Feb. 22, 2022) .............................................. 12

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,

    228 F.R.D. 541 (S.D. Tex. 2005) ................................................................. 14

*Kostka v. Dickey's Barbecue Restaurants*,

    2022 WL 16821685 (Oct. 14, 2022) ............................................................. 12

*Matson v. NIBCO Inc.*,

    2021 WL 4895915 (W.D. Tex. Oct. 20, 2021) ............................................. 11

*Melby v. Am.'s MHT, Inc.*,

    2018 WL 10399004 (N.D. Tex. June 22, 2018) ........................................................... 12

*Mullins v Direct Digital LLC*,

    795 F.3d 654 (7th Cir. 2015) ........................................................................................ 5

*Newby v. Enron Corp.*,

    394 F.3d 296 (5th Cir. 2004) ........................................................................................ 9

*Odonnell v. Harris Cnty.*,

    No. H-16-1414, 2019 WL 4224040 (S.D. Tex. Sept. 5, 2019) ...................................... 9

*Petrovic v. Amoco Oil Co.*,

    200 F.3d 1140 (8th Cir. 1999) .................................................................................... 14

*Reed v. General Motors Corp.*,

    703 F.2d 170 (5th Cir. 1983) ................................................................................. 8, 9

*Schwartz v. TXU Corp.*,

    2005 WL 3148350 (N.D. Tex. Nov. 8, 2005) ...................................................... 11, 12

*Spegele v. USAA Life Ins. Co.*,

    No. 5:17-cv-967-OLG, 2021 WL 4935978 (W.D. Tex. Aug. 26, 2021) ........................ 9

*Stott v. Capital Fin. Servs., Inc.*,

    277 F.R.D. 316 (N.D. Tex. 2011) ............................................................................... 13

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,

    669 F.3d 632 (5th Cir. 2012) ........................................................................................ 9

*Welsh v. Navy Fed. Credit Union*,

    No. 5:16-CV-1062-DAE, 2018 WL 7283639 (W.D. Tex. Aug. 20, 2018) ................... 11

**Statutes**

28 U.S.C. § 1715 ........................................................................................... 11

**Rules**

Fed. R. Civ. P. 23 ...................................................................................passim

**Treatises**

*Judges' Class Action Notice & Claims Process Checklist & Plain Language Guide* 3

(2010). ....................................................................................................... 10

## I.    INTRODUCTION

On February 6, 2024, this Court preliminarily approved a proposed class action settlement between Plaintiffs M.S., D.H., C.C., and Nicole Tokarski, on behalf of themselves and all other persons similarly situated (collectively, "Class Representatives"), and Defendant Med-Data, Inc. ("Med-Data" or "Defendant") (and together with Class Representatives, the "Settling Parties"), conditionally certified a Settlement Class, and authorized the implementation of the Notice Plan described in the Motion for Preliminary Approval of Class Action Settlement. Notice of the Settlement was disseminated, and it is clear the Class overwhelmingly supports the settlement, with zero objections and six timely opt-outs out of approximately 140,908 class members. Declaration of William B. Federman in Support of Plaintiffs' Unopposed Mot. for Final Approval of Class Action Settlement (hereinafter "Federman Decl."), attached hereto as Ex. 1, ¶ 11.

Class Representatives, by and through their undersigned counsel, respectfully request this Court grant final approval of this Settlement so that the Settlement Administrator may begin the process of distributing benefits to those members of the Settlement Class who have submitted valid claims. Because the Settlement Class satisfies all the requirements of Rule 23 and the proposed Settlement is fair, reasonable, and adequate, the Court should finally certify the Settlement Class and grant final approval.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

In the interest of judicial efficiency, for factual and procedural background on this case, Class Representatives refer this Court to and hereby incorporate Plaintiffs' Motion for Preliminary Approval of Class Action Settlement and Plaintiffs' Brief in Support (ECF

1

No. 82) filed on November 16, 2023, and the accompanying Exhibits, including the proposed Settlement Agreement, filed in conjunction therewith (ECF No. 82-2). On February 6, 2024, after considering the terms of the Settlement Agreement in light of the issues presented in this case, the stage and complexity of the proceedings, the expense of further litigation, the range of possible discovery, the absence of any evidence of collusion between the Parties, and the experience of Class Counsel, and finding the Settlement Agreement to be preliminarily "fair, reasonable and adequate," this Court granted Plaintiffs' Motion for Preliminary Approval of Class Action Settlement. ECF No. 88. Nothing has changed that would alter this Court's preliminary finding.

## III.    THE TERMS OF THE SETTLEMENT

### A.    The Settlement Class.

In its Preliminary Approval Order, the Court conditionally certified the following class for settlement purposes:

> All residents of the United States whose personal information was included in the data uploaded to GitHub.com by a Med-Data employee and announced by Med-Data in March 2021.

Order, ECF No. 88 (hereinafter "Prelim. Approval Order"), ¶¶ 3–4; *see also* Settlement Agreement, ECF No. 82-2 (hereinafter "SA"), ¶ III.1.

### B.    Settlement Benefits.

The Settlement Agreement provides significant monetary relief. The Settlement creates a $7,000,000.00 non-reversionary common Settlement Fund in exchange for a release of claims against Defendant by Settlement Class Members. SA, ¶ IV. From the $7,000,000.00 Settlement Fund, all Settlement Class Members are eligible for the

following monetary benefits:

### 1. Tier One Claims.

Settlement Class Members were eligible to submit a claim for reimbursement of up to $5,000 for documented Out-of- Pocket Losses attributable to the Security Incident. *Id.* ¶ IV.1.a. Claims under Out-of-Pocket Losses could also include a claim for up to five (5) hours of time spent dealing with issues related to the Data Incident, compensated at $25 per hour. *Id.* ¶ IV.1.c.

### 2. Tier Two Claims.

In the alternative to filing a claim for Out-of-Pocket Losses and Time Spent, Settlement Class Members had the option to submit a claim for a cash payment of up to $500. *Id.* IV.2.

### 3. Automatic Health Data/Fraud Monitoring Services.

A significant benefit of the Settlement is that all Class Members will receive 36 months of health data/fraud monitoring services, including $1 million of identity theft insurance coverage, without needing to file a claim. *Id.* ¶ IV.3.

### 4. Business Practices Changes/Injunctive Relief.

In addition to providing monetary benefits, the Settlement requires Med-Data to implement certain specified business practice changes that substantially lessens the risk of similar harm to Settlement Class Members in the future. *Id.* ¶ IV.4. In general, these business practice changes, which Med-Data must maintain for at least two (2) years, include:

- Annual cybersecurity testing by a qualified cybersecurity firm and Board presentations by an internal security auditor;

- regular updates to internal security policies and procedures;

- robust monitoring and auditing for data security issues;

- encryption of PII/PHI and data access controls;

- annual data systems penetration testing and training;

- a monitored internal whistleblowing mechanism; and

- maintenance of a legally compliant data deletion policy.

*Id.*[1] Further, Med-Data has agreed to work with GitHub to ensure that no PHI/PII of class members associated with Med-Data remains accessible on that public platform. *Id*

### C.    Notice Effectively Reached Settlement Class Members.

In its Preliminary Approval Order, the Court appointed Postlethwaite & Netterville ("P&N" or "Settlement Administrator") as the Settlement Administrator. Prelim. Approval Order, ¶ 7. The Settlement Administrator, in accordance with the Court's Preliminary Approval Order, provided notice to the Class in the manner set forth below.

The Settlement Administrator sent Postcard Notice to 136,641 Settlement Class Members, using the most recent address in Med-Data's records or identified through address correction services. *See* Declaration of Elena MacFarland Regarding Status of Settlement Notice Program, attached hereto as Ex. 2 ("Admin Decl."), ¶ 8. P&N also executed supplemental mailing for 8,415 Settlement Class Members for whom an initial Postcard Notice was not deliverable but for whom P&N was able to obtain an alternative

---

[1] Specific details regarding the business practice changes are set forth In the Settlement Agreement, ¶ IV.4.

mailing address. *Id*. The Settlement Administrator created a publicly available website and toll-free hotline devoted to providing relevant information related to the case and settlement and assistance to Class Members. *Id*. ¶¶ 10, 12.

The Settlement Agreement and The Notice Plan approved by the Court contained a provision allowing for Class Counsel to request a second round of notices—a reminder notice—be sent to class members who had not submitted claims. *Id*. ¶ 9. At the request of Class Counsel, a reminder Postcard Notice was mailed to 121,030 Settlement Class Members who had not yet submitted a claim. *Id*. This reminder Notice was mailed on April 23, 2024, a month prior to the Claims Deadline of May 21, 2024. *Id*.

Through the initial direct Notice, including the supplemental mailing, and the reminder Notice, the Notice Program reached 86.92% of Settlement Class Members. *Id*. ¶ 14.

Prior to granting final approval, this Court must consider whether the members of the class received adequate notice of the settlement. Fed. R. Civ. P. 23(c)(2)(B); *accord Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Specifically, the court must find that the notice to the class was "the best notice that is practicable under the circumstances." Fed. R. Civ. P. 23(c)(2)(B). "[T]he rule does not insist on actual notice to all class members in all cases." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (quoting *Mullins v Direct Digital LLC*, 795 F.3d 654, 665 (7th Cir. 2015)). Although what constitutes the "best notice practicable" is case-specific, the Federal Judicial Center has noted that a notice campaign that reaches 70% of a class is often reasonable. Federal Judicial Center, *Judges' Class Action Notice & Claims Process Checklist & Plain*

*Language Guide* 3 (2010).[2]

**D.      The Reaction of the Settlement Class Has Been Overwhelmingly Positive.**

The Court-approved Notice Plan informed each Settlement Class Member of their right to request exclusion from the Settlement Class by providing written notice of such intent to the Settlement Administrator. *See* SA, ¶ VIII.3. The Notices also informed each Settlement Class Member of their right to object to the Settlement and the process to do so. The deadline to object or opt-out passed on April 26, 2024.  There have been 6 Opt-Outs and zero Objections received. Admin Decl., ¶ 16.

The claims deadline ran May 21, 2024. *Id*. ¶15. As of July 5, 2024 the Settlement Administrator has received 4,565 non-duplicative claims from Settlement Class Members.[3] *Id.*

The Settlement Website, www.MedDataSettlement.com, was made publicly accessible on March 7, 2024. *Id*. ¶ 10. Visitors to the Settlement Website could access and download the Summary Notice, the Long Form Notice, the Claim Form, as well as case documents, such as the Class Action Complaint, the Settlement Agreement, the Preliminary Approval Order, the Motion for Attorneys' Fees, and other relevant documents. *Id*. Through the Settlement Website, Class Members could also submit claims electronically, submit address updates electronically, and find answers to frequently asked questions (FAQs), important dates and deadlines, and contact information for the

---

[2] Available at: https://www.fjc.gov/sites/default/files/2012/NotCheck.pdf.
[3] Plaintiffs will provide the Court with updated claims information prior to the Final Approval Hearing to be held on September 11, 2024.

Settlement Administrator. *Id* As of July 5, 2024, the Settlement Website has had 39,056 unique visitors. *Id*

P&N established a dedicated toll-free telephone number which is available twenty-four hours per day. *Id*. ¶ 12. Settlement Class Members can call and interact with an interactive voice response system ("IVR") that provides important settlement information and offers the ability to leave a voice message to address specific questions or requests. *Id*. The dedicated toll-free telephone number was provided in all Notices, as well as being listed in multiple locations on the Settlement Website. *Id.* The Settlement Website and dedicated toll-free telephone number will remain active through the close of the Settlement administration process. *Id.*

In accordance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b), CAFA Notice was mailed on December 20, 2023 to appropriate officials. *Id.* ¶ 5. The 90-day statutory notice period has expired and neither Class Counsel nor the Settlement Administrator has received any inquiries from any federal or state official in response to the CAFA notice. *Id*.

Thus, the Notice Plan has been executed in accordance with the Preliminary Approval Order in a manner that ensured the due process rights of Settlement Class Members were amply protected. *See* Fed. R. Civ. P. 23(c)(2)(B); *see also* Federman Decl., ¶ 12.

## IV.    THE SETTLEMENT SHOULD BE FINALLY APPROVED

Plaintiffs respectfully request that the Court grant final certification of the Settlement Class because: (1) the Settlement Class satisfies the requirements of Rule 23(a)

and (b)(3); (2) the Court-approved notice program satisfies both Rule 23 and due process requirements and has been fully implemented pursuant to the Court's requirements; and (3) the Settlement is fair, reasonable, and adequate.

### A.   The Settlement is Fair, Reasonable, and Adequate

A Court may approve a class action settlement when it is fair, reasonable, and adequate. Fed. R. Civ. P. 23(e)(2); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). To make that determination, Rule 23(e)(2) provides the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Additionally, in *Reed v. General Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983), the Fifth Circuit laid out six (6) factors for courts to consider in determining the fairness, reasonableness, and adequacy of a proposed class settlement: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the

litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members." *Id.* at 172. "Because the Rule 23 and case-law factors overlap, courts in this circuit often combine them in analyzing class settlements." *Odonnell v. Harris Cnty.*, No. H-16-1414, 2019 WL 4224040, at *8 (S.D. Tex. Sept. 5, 2019); *see, e.g.*, *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) ("[D]istrict courts must determine whether proposed class-action settlements are fair, adequate, and reasonable. To do this in the Fifth Circuit, courts evaluate the six *Reed* factors."); *Newby v. Enron Corp.*, 394 F.3d 296, 308 (5th Cir. 2004) (affirming district court's grant of final approval where district court "faithfully applied" the *Reed* factors).

The Court concluded these factors supported the finding that the Court would likely approve the Settlement as fair, reasonable, and adequate such that issuance of notice to the Settlement Class was justified. ECF No. 88. "Nothing has occurred that would alter the Court's initial assessment that the Settlement is fair, reasonable, and adequate." *Spegele v. USAA Life Ins. Co.*, No. 5:17-cv-967-OLG, 2021 WL 4935978, at *3 (W.D. Tex. Aug. 26, 2021). In fact, the overwhelmingly positive response of the Settlement Class Members further underscores that the Settlement is, in fact, fair, reasonable, and adequate. *See id.* For these reasons, Class Representatives now respectfully request that the Court find that the Settlement is fair, reasonable, and adequate under both the Rule 23(e) factors and the Fifth Circuit's *Reed* factors and enter an order granting final approval.

### 1. Class Representatives and Class Counsel Have Adequately Represented the Class.

Class Representatives and Class Counsel have vigorously pursued this litigation, satisfying the adequacy of representation factor under Rule 23(e)(2)(A). First, the Class Representatives have shown their dedication to representing the Class by actively participating in the litigation, providing allegations for the Complaint, gathering information for discovery, sitting for their depositions, and working with Class Counsel to advance the litigation on behalf of themselves and all members of the proposed Settlement Class. *See*, ECF No. 91-1, ¶ 36.

Second, Class Counsel are experienced in the successful litigation and settlement of class action litigation, including data privacy cases. *See,* ECF No. 82-1, ¶¶ 9-11. As a result of Class Counsel's efforts, the proposed Settlement Agreement provides significant monetary relief to the Settlement Class. *See generally*, ECF No. 82-2. Since the Preliminary Approval Order, Class Counsel have remained hard at work overseeing the notice program and claims process and will continue to do so until the Settlement is fully implemented. *See* ECF No. 91-1, ¶ 21.

This factor supports final approval.

### 2. The Settlement was the Result of Arms-length Negotiations Without Fraud or Collusion.

The proposed Settlement is the product of significant negotiation by experienced counsel on both sides with the assistance of two neutral mediators, culminating in the execution of the Agreement. Federman Decl., ¶ 13. The arm's length nature of the negotiations amongst experienced counsel supports a finding that the Settlement is fair,

reasonable, and adequate. *See* Comment to December 2018 Amendment to Fed. R. Civ. P. 23(e) ("The involvement of a neutral or court-affiliated mediator or facilitator in those negotiations may bear on whether they were conducted in a manner that would protect and further the class interests."); *see also Welsh v. Navy Fed. Credit Union*, No. 5:16-CV-1062-DAE, 2018 WL 7283639, at \*12 (W.D. Tex. Aug. 20, 2018) ("The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the contrary.").

Nothing has changed to alter the Court's preliminary determination that there was no "evidence of collusion between the Parties" in reaching the Settlement. *See* ECF 88, p. 1. Thus, this factor supports final approval.

### 3.    The Settlement is Favorable Given the Duration, Complexity and Expense of The Litigation and The Relief Sought.

The Parties devoted significant time and resources to litigating this case over the course of two years. Federman Decl., ¶ 5. The Parties conducted multiple depositions, including those of each Representative Plaintiff and corporate representatives, briefed motions to dismiss in each case, served multiple sets of discovery, with Med-Data producing over 26,000 documents, and briefed motions for class certification in each case. *Id.* ¶¶ 5–6. Under these circumstances, there is "no doubt" that Class Representatives and their counsel were "able to form an adequate appreciation of the merits of the case before negotiating." *Schwartz v. TXU Corp.*, 2005 WL 3148350, at \*19–20 (N.D. Tex. Nov. 8, 2005) (cleaned up); *Matson v. NIBCO Inc.*, 2021 WL 4895915, at \*10 (W.D. Tex. Oct. 20, 2021) (noting the central question is "whether the parties have obtained sufficient

11

information about the strengths and weaknesses of their respective cases to make a reasoned judgment about the desirability of settling the case on the terms proposed or continuing to litigate it.").

Continued litigation would have required additional time and expense, and would have been accompanied by the risk of adverse rulings on class certification, summary judgment, and trial, leaving class members with no recovery. *See Hashemi v. Bosley, Inc.*, 2022 WL 2155117, at *7 (C.D. Cal. Feb. 22, 2022) (recognizing the risks of proving causation and injury in data breach cases, "compounded by the fact that data breach class actions are a relatively new" and "damages methodologies in data breach cases are largely untested and have yet to be presented to a jury"); *Kostka v. Dickey's Barbecue Restaurants*, 2022 WL 16821685, at *11 (Oct. 14, 2022) ("[I]n the Fifth Circuit, there is little case law on the subject of data breaches. Moreover, the out-of-circuit authority is not universally favorable to the proposed claims."), *adopted by* 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022).

In light of these risks, the Settlement, which secures immediate and significant relief for class members, is an outstanding result and this factor supports final approval. The litigation has lasted for more than two years and, should litigation continue, the amount of time it would take to recover on behalf of the class "would measure in [additional] years rather than months were the Court to disapprove the proposed settlement." *Melby v. Am.'s MHT, Inc.*, 2018 WL 10399004, at *8 (N.D. Tex. June 22, 2018); *see Schwartz*, 2005 WL 3148350, at *19 (weighing a potential "delay in the receipt of any relief" in favor of approving a proposed settlement).

Moreover, when evaluating a proposed class action settlement, "the Court must determine "whether the range of possible recovery or the benefit of the settlement to plaintiffs outweighs the risks of proceeding through litigation." *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 290–91 (W.D. Tex. 2007). This Settlement guarantees Settlement Class Members real relief for harms and protections from potential future fall-out from the Data Breach. This Settlement provides class members with a $7 million recovery, access to fraud monitoring services, *and* concrete changes to Med-Data's cybersecurity practices. SA, ¶ IV. The value achieved through the Settlement is guaranteed, where chances of prevailing on the merits remain uncertain. Through the Settlement, Settlement Class Members gain significant benefits without having to face further risk of not receiving any relief at all.

### 4. The Views of Class Counsel, Class Representatives, and the Settlement Class Support Final Approval .

All Class Representatives and Class Counsel firmly believe that this Settlement is fair, reasonable, and adequate, and in the best interests of Settlement Class Members. Federman Decl., ¶ 19. "The endorsement of class counsel is entitled to deference, especially in light of class counsels' significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims." *DeHoyos*, 240 F.R.D. at 292; *see Stott v. Capital Fin. Servs., Inc.*, 277 F.R.D. 316, 346 (N.D. Tex. 2011) ("As class counsel tends to be the most familiar with the intricacies of a class action lawsuit and settlement, 'the trial court is entitled to rely upon the judgment of experienced counsel for the parties.'").

Further, the overwhelmingly positive reaction of the Settlement Class also supports

final approval. The deadline to object or opt-out passed on April 26, 2024 and to date there have been no Objections and only 6 Opt-outs received. Admin Decl., ¶ 16. Thus, the favorable reception by the class constitutes strong evidence of the fairness of the Settlement and supports approval. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 2018 WL 1942227, at *5 (N.D. Tex. Apr. 25, 2018) ("Receipt of few or no objections can be viewed as indicative of the adequacy of the settlement.") (citing *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 567 (S.D. Tex. 2005)); *DeHoyos*, 240 F.R.D. at 293 ("Given the wide reach of the notice versus the small number of objections, the Court finds the opinions of class counsel, the class representatives, and the absent class members weigh in favor of approving the settlement.") (citing *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir. 1999)).

### 5. The Effectiveness of the Method of Distributing Relief to the Class Supports Approval of the Settlement.

Subject to Court approval, the Settlement Fund will be distributed in the following order: (1) Tier 3 benefits of 36 months of Medical Shield Premium service for all Settlement Class Members who timely activate those services; (2) reimbursement for Tier 1 Out-of-Pocket Losses and Time Spent for valid and approved claims; (3) Notice and Administration Costs; (4) Fee Award and Costs as awarded by the Court; (5) Service Award payments approved by the Court; and (6) Tier 2 Alternative Cash Payments up to $500 for Settlement Class Members who submit valid claims. *See* SA, ¶ IV. This allocation plan is fair and reasonable because it prioritizes fraud prevention and reimbursing claimants for lost time and out-of-pocket losses, ensuring that those most injured by the

14

Data Incident are compensated and that all Settlement Class Members can protect themselves from future fraud. Federman Decl., ¶ 15. The alternative cash payment recognizes Plaintiffs' allegation that PHI/PII exposed in the Data Breach has independent value. *Id*. at ¶ 17.

No residual funds will revert to Defendant. SA, ¶ IV.5. Settlement Class Members were able to select digital payments or to receive the payments by check. ECF No. 82-2 at 35. Given the simplified process for paying each Class Member and the fact that no funds will revert to Defendant, this factor weighs in favor of approval under Fed. R. Civ. P. 23(e)(2)(C)(ii).

### 6.    The Settlement Treats Settlement Class Members Equitably Relative to Each Other.

The final factor for final approval of a settlement considers whether class members are treated equitably. *See* Fed. R. Civ. P. 23(e)(2)(D). Importantly here, all Settlement Class Members automatically received a code to enroll in 36 months of health data/fraud monitoring services. Federman Decl., ¶ 16. This service is available to Settlement Class Members whether or not they file a claim in the Settlement.  Additionally, all Settlement Class Members were eligible to make a claim for the same amount of Out-of-Pocket expense and time spent reimbursements. *Id*. Moreover, all Settlement Class Members had the option to elect an alternative cash payment which is calculated as a pro rata share of the Net Settlement Fund. *Id*. Thus, the Settlement treats Settlement Class Members equitably relative to each other, satisfying Rule 23(e)(2)(D). *See* Fed. R. Civ. P. 23(e)(2)(D).

\*       \*       \*

Given the litigation risks involved and the complexity of the underlying issues, the $7,000,000.00 recovery is a significant and meaningful result, designed to meet the types of repercussions sustained by Settlement Class Members following a data breach. Accordingly, the Rule 23(e) and Fifth Circuit *Reed* factors support a finding that the Settlement is fair, reasonable, and adequate, and therefore that it should be finally approved.

### B.    Certification of the Settlement Class Remains Appropriate.

The Court previously concluded that it was appropriate to provisionally certify the Settlement Class for settlement purposes only. *See* ECF No. 88, ¶ 3. Since preliminary approval, nothing has changed that should cause call into question the Court's prior conclusions regarding class certification.

### 1.    The Requirements of Rule 23(a) Remain Satisfied.

The Settlement Class is numerous—over 140,000 members received direct notice of the Settlement. Federman Decl., ¶ 10.

There are significant questions of law and fact common to all Settlement Class members that will "generate common answers" that are "apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). All Settlement Class Members' claims arise from the same Data Breach and turn on whether Med-Data had a duty to protect their PHI/PII. ECF No. 82, p. 12.

Class Representatives' claims are typical of Settlement Class Members' claims because they arise from the same course of alleged conduct, are premised on the same legal

16

theory, and allege the same injuries resulting from the Data Breach. *Id*., p. 13.

Finally, Class Representatives adequately performed their duties in representing the Settlement Class and have no conflicts of interest with other Settlement Class Members. Class Representatives and their counsel have, and continue to, vigorously prosecute this case on behalf of the Settlement Class. Further, Co-Lead Class Counsel are highly experienced in the successful litigation and settlement of class action litigation, including data privacy cases, have zealously prosecuted this matter, and are well qualified to represent the Settlement Class. Federman Decl., ¶ 19; *see also* ECF No. 82-1, ¶¶ 9–11.

### 2. The Requirements of Rule 23(b)(3) Remain Satisfied.

"In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997). In its Preliminary Approval Order, the Court found that the Settlement Class met each of Rule 23(b)(3)'s requirements of predominance and superiority. ECF No. 88, pp. 2–3 ("[T]he Settlement Class is ascertainable and so numerous that joinder would be impracticable, the action presents common issues of law and fact that predominate over any individual questions.").

Common issues related to the Data Breach continue to dominate over any individual issues. Additionally, class-wide resolution is superior, because it is the only practical means through which the Settlement Class Members may obtain significant and immediate relief.

Therefore, because the proposed Class satisfies the requirements for class certification, the Court should certify the Settlement Class for purposes of judgment on the Settlement.

**C.** **The Court Should Confirm Its Earlier Appointment of Class Counsel and Settlement Class Representatives.**

The Court appointed Beth E. Terrell and Ryan Tack-Hooper of Terrell Marshall Law Group, Jean Martin of Morgan & Morgan, Maureen Brady of McShane & Brady, William B. Federman of Federman & Sherwood, and John Heenan of Heenan & Cook as Class Counsel pursuant to Rule 23(g)(3) to act on behalf of the Settlement Class pending final approval of the Settlement. Prelim. Approval Order, ¶ 6. Upon the Court's certification of the Settlement Class for purposes of entry of judgment on the Settlement, Class Representatives request that these counsel be appointed Class Counsel under Rule 23(g)(1).

The Court likewise preliminarily appointed Plaintiffs M.S., D.H., Nicole Tokarski, and C.C. as Settlement Class Representatives. *Id*. Because Plaintiffs have diligently and successfully fulfilled their responsibilities as the representatives of the Settlement Class, the Court should finally appoint  them as Settlement Class Representatives.

**V.    CONCLUSION**

For the foregoing reasons, Class Representatives respectfully request that the Court enter an Order (1) finally certifying the Settlement Class for settlement purposes; (2) granting final approval of the Settlement; (3) finding that Notice has been conducted in accordance with the Court-approved notice plan and due process; (4) dismissing with prejudice Plaintiffs' and Settlement Class Members' claims against Defendant; and (5) ordering the Settlement Class Members be bound by the releases set forth in the Settlement

Agreement.

RESPECTFULLY SUBMITTED AND DATED this 5th day of July, 2024.

FEDERMAN & SHERWOOD

By: /s/ *William B. Federman*
William B. Federman, TX Bar No. 00794935
Email: wbf@federmanlaw.com
10205 N. Pennsylvania Ave.
Oklahoma City, Oklahoma 73120
Telephone: (405) 235-1560

Maureen Brady, *Admitted Pro Hac Vice*
Email: mbrady@mcshanebradylaw.com
MCSHANE & BRADY LLC
1656 Washington St., Ste. 120
Kansas City, Missouri 64108
Telephone: (816) 888-8010

Beth E. Terrell
Email: bterrell@terrellmarshall.com
Ryan Tack-Hooper
Email: rtack-hooper@terrellmarshall.com
TERRELL MARSHALL
LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
Telephone: (206) 816-6603

Jean S. Martin
Email: jeanmartin@forthepeople.com
MORGAN & MORGAN COMPLEX
LITIGATION GROUP
201 North Franklin Street, 7th Floor
Tampa, Florida 33602
Telephone: (813) 559-4908

John Heenan
Email: john@lawmontana.com
HEENAN & COOK
1631 Zimmerman Trail, Suite 1
Billings, Montana 59102
Telephone: (406) 839-9081

***Attorneys for Plaintiffs***

## **CERTIFICATION OF WORD COUNT**

I hereby certify that this document complies with Rule 18 of this Court's Procedures, being 4,594 words (under the Court's limit of 5,000 words), exclusive of case caption, tables, signatures, and certificates.

*/s/ William B. Federman*
William B. Federman

## **CERTIFICATE OF SERVICE**

I hereby certify that on  July 5, 2024, I caused the foregoing to be electronically filed with the Clerk of Court using the CM/ECF system, which will send notification of the filing to all counsel of record.

*/s/ William B. Federman*
William B. Federman